# Gibson *v.* The State.

## *Indictment for Murder.*

1. *Irrelevant evidence in rebuttal.*—When irrelevant evidence has been allowed to go to the jury without objection, it is not error to admit irrelevant evidence in rebuttal.

2. *Rule as to garbling.*—When a part of a conversation or transaction has been put in evidence, the other party may call for the whole of it.

3. *Self-defense; interference in behalf of brother.*—Two brothers being jointly indicted and tried for murder, one can not invoke the doctrine of self-defense, because he was not at fault in bringing on the difficulty, but struck in aid or defense of the other, unless the other also was free from fault.

4. *Same; as to who is aggressor.*—A charge which instructs the jury that the defendant was not the aggressor, or provoker of the difficulty, if his first remark to the deceased was made in a peaceable and quiet manner, does not relieve him from secondary fault in bringing on the difficulty, and is properly refused.

5. *Charge as to construction of evidence.*—A charge which instructs the jury that, if the evidence is susceptible of two reasonable constructions, one of which is consistent with the defendant's innocence, it is their duty to adopt that construction, is calculated to confuse and mislead, and is properly refused.

6. *Charges as to self-defense*, stating facts hypothetically, as set out in full in report, held correct, and their refusal error.

FROM the Circuit Court of Crenshaw.

Tried before the Hon. JOHN P. HUBBARD.

[Gibson v. The State.]

The defendants in this case, Ben. and Sam. Gibson, brothers, were jointly indicted and tried for the murder of John Smith, by shooting him with a pistol, or by cutting him with a knife. On the first trial, each of the defendants was convicted of murder in the second degree, and sentenced to the penitentiary for the term of twenty years; but the judgment was reversed by this court, and the cause remanded, as shown by the report of the case.—*Gibson v. State*, 89 Ala. 121–30. On the second trial, as the record now shows, Ben. Gibson was again convicted of murder in the second degree, and sentenced to the penitentiary for twelve years; while Sam. Gibson was convicted of manslaughter in the first degree, and sentenced to the penitentiary for the term of three years.

The difficulty between the parties occurred on Sunday afternoon, May 19th, 1889, near a country school-house, where singing exercises were usually held at that time. The defendants arrived there ten or fifteen minutes before the deceased came up; and when the deceased came up, and, after staying in the house a few minutes, started towards a spring or well, which was one hundred yards or more from the house, they followed him. The deceased was accompanied by Green Underwood, who was a cousin of the defendants, and who was also examined as a witness for the defense; and the defendants were accompanied by Ben. Williamson, who was their brother-in-law. When the parties came near each other, Ben. Gibson asked Underwood if that was John Smith, to which Smith replied that it was; and an altercation then ensued between them, growing out of a charge by the former that Smith had gone into the field of his father, Joe Gibson, and had cursed and abused him, which charge was denied by Smith. The evidence for the State was to the effect, that when Smith denied the charge, some other words passed between him and Ben. Gibson, when Gibson struck him, or struck at him, and knocked his hat off; that Smith picked up his hat, and, backing off, put his hand in his pocket; that Gibson advanced on him, and struck him again as he drew his knife; that Smith struck at Ben. Gibson with his knife, and cut him in the left arm, whereupon Sam. Gibson rushed up, and cut Smith in the left arm and side; and that as Smith turned around, and was looking at the wound, Ben. Gibson, who was standing on his right, and who had drawn his pistol, fired the fatal shot, striking him in the neck. Each of the defendants testified in their behalf, and each denied that he had sought or encouraged the difficulty with Smith, or had gone to the school-house for the purpose of attacking him. They said that they had been advised by the county solicitor,

[Gibson v. The State.]

to whom they applied for advice, that they could not prosecute Smith for his abuse of their father, but could warn him not to come on the premises again, and that they must give this notice, or warning, in the presence of witnesses; and they said that, when Ben. Gibson first accosted Smith, he only warned him, in a peaceable and quiet manner, that he must not come on their father's premises again, and that Smith responded with angry and threatening words. Their testimony was corroborated by the county solicitor, as to the advice which he had given them; and the other witnesses introduced by them, while giving different versions of the words used and the acts of the several parties at the time of the difficulty, each stated the particulars more favorably to them than the witnesses for the prosecution. The charges asked and refused, and which are noticed particularly in the opinion of this court, do not require a statement of the evidence in detail.

The following charges were asked and refused, exceptions being duly reserved by the defendants to their refusal:

(1.) "If the jury believe from the evidence that Sam. Gibson had no knowledge or information whatever that Ben. Gibson had the pistol before the difficulty commenced, or that Ben. or himself expected to meet Smith at the school-house on this occasion; and that nothing was said between them, or with any one else, about making an attack on Smith by Ben. Gibson, or by any one else; or that there was any agreement or understanding, either express or implied, that Ben. or Sam. Gibson would make any attack on John Smith on the day and at the place of the killing, or at any other time and place; and that Sam. Gibson, without any knowledge or information whatever of any kind or character, cut John Smith after he had cut his brother Ben., and while he (Sam.) saw no weapon or other means of defense in the possession of Ben., and had no knowledge or information that Ben. had any pistol or other means of defense; and that Sam. Gibson cut John Smith under the reasonable and honest belief that it was necessary for him to strike to keep Smith from killing his brother Ben.; and the circumstances were such as to create in the mind of a reasonable man [a belief that?] such necessity existed; and he desisted as soon as he struck; and that Sam. Gibson neither provoked nor brought on the difficulty, nor encouraged or aided in the same, or was ready to lend aid if necessary,—then they should find Sam. Gibson not guilty; provided they believe from the evidence that the assault made by Smith on Ben. Gibson was felonious and violent, and there was no reasonable mode of escape for Ben. without increasing his danger, and that Ben. was not in fault in provoking or bringing on the difficulty."

[Gibson v. The State.]

(2.) "If the jury are reasonably satisfied from the evidence that neither Ben. nor Sam. Gibson knew anything at all about John Smith's coming to the school-house on the day of the killing, nor had any information that he would be there, but only stopped on being invited, not knowing or expecting Smith to be there; and that they in no way armed themselves for the purpose of using the arms on Smith whenever they should meet him; and that when Ben. Gibson saw Smith, on his and Sam. Gibson's way to Sam's house, or to Williamson's house, after Ben's broad-axe and blacking-line, he approached him in a quiet and peaceable manner, and, in a peaceable and quiet manner, started to warn him to keep off his and his father's place, as he had been advised by the county solicitor he had the right to do; and that before he gave him the warning, and very soon after the first words were spoken, Smith became enraged, and acted so that Gibson did not give him the warning before the shooting occurred; and if they further believe from the evidence that Ben. Gibson did not slap off Smith's hat, nor in any manner provoke or encourage the difficulty, but that Smith violently and feloniously assaulted Ben. Gibson, in such a manner as to create in the mind of a reasonable man the reasonable belief that his life was in imminent peril, or that he was in danger of great bodily harm, either real or apparent; and that such was the impression upon Ben. Gibson's mind; and that Smith so violently attacked him, cutting and disabling his arm, so that retreat by Ben. Gibson was greatly perilous, and would have increased his danger and peril; and that Ben. Gibson fired the fatal shot under this reasonable belief of imminent peril, and did not fire it with malice, or for or with any other purpose or intent than to save his life, or to save himself from great bodily harm; then the jury may find him not guilty."

(3.) "If, after carefully and cautiously considering all the testimony in the case, there are, in their judgment, two constructions of the whole testimony, each of which is reasonable in itself, one of which shows, or is consistent with the guilt of the defendants, and the other shows, or is consistent with their innocence; then it is the duty of the jury, in their deliberations, to adopt that construction of the whole testimony which favors their innocence."

(4.) "If the jury believe from the evidence that, before the difficulty, Ben. Gibson approached the deceased, and was talking to him in a peaceable and quiet manner, and in no manner sought any difficulty; and that the deceased replied in an insulting and threatening manner, and putting his hand in his hip pocket, saying he would shoot his head off, and pulling

out and drawing his knife, and in a threatening attitude said that he would cut Ben. Gibson's throat, and did at once leap to him, and cut and disabled his arm ; and that Ben. Gibson neither sought, provoked, or encouraged the difficulty ; and that the attack on him was so sudden and violent that there was no reasonable mode of escape, without increasing his peril ; and that Ben. Gibson honestly believed that his life was in imminent peril, or that he was in danger of great bodily harm, and the circumstances were such as to create in the mind of a reasonable man a reasonable belief of imminent peril to life, or of great bodily harm ; and that he fired the fatal shot under this honest and reasonable belief of imminent peril, then they may find said Ben. Gibson not guilty."

(5.) " If the jury believe from the evidence that neither of the defendants brought on, provoked, or encouraged the difficulty, but *was* talking with the deceased in a quiet, orderly, and peaceable manner ; and that the deceased threatened to shoot said Ben. Gibson, and at the same time placed his hand in his pocket, in such manner as to indicate to a reasonable mind that his purpose was to draw a weapon and shoot, and drew it in a threatening manner, and said he would cut his throat, and jumped at Ben. Gibson, and cut and disabled his left arm, and was putting himself in position to strike again ; and that at that moment there was no reasonable mode of escape, without increasing the defendant's peril ; then the defendant was authorized to anticipate the deceased, and shoot first, having the right to act upon the reasonable appearance of things."

(6.) " It is not unlawful to talk to another, in a quiet and peaceable manner ; neither is it unlawful for one man to warn another, in a quiet and peaceable manner, not to trespass on his premises ; and if the jury find from the evidence that the thing Ben. Gibson did in the first instance was to speak to Smith in a peaceable and quiet manner, to warn Smith not to trespass on his premises, then Ben. Gibson was not the aggressor, or the provoker of the difficulty."

(7.) " If the facts and circumstances in evidence admit of two reasonable constructions, one favoring innocence, and the other favoring guilt, it is the duty of the jury to give that construction which favors innocence, rather than that in favor of guilt."

W. L. PARKS, and WATTS & SON, for appellants, argued each of the rulings to which exceptions were reserved, and cited the following cases : *McAnally v. State,* 74 Ala. 9 ; *Gray v. State,* 63 Ala. 66 ; *Commander v. State,* 60 Ala. 1 ; *Coleman*

[Gibson v. The State.]

v. *State*, 59 Ala. 52; *Tatum v. State*, 63 Ala. 147; *Cohen v. State*, 50 Ala. 108.

Wm. L. Martin, Attorney-General, for the State, cited the following cases : (1) As to the admissibility of the evidence objected to, cases cited in 3 Brick. Digest, 285, § 548; (2) as to charges asked and refused, *Martin v. State*, 89 Ala. 115; *Gibson v. State*, 89 Ala. 121: *Storey v. State*, 71 Ala. 329; *Smith v. State*, 88 Ala. 23; *Fonville v. State*, at present term.

STONE, C. J.—Joe Gibson, father of the defendants, was examined as a witness for them. He testified that, about a week before the homicide, some altercation and angry words took place between him and Smith, the deceased. This altercation occurred in witness' field, and he testified that, on the occasion referred to, Smith cursed him. The bill of exceptions, in connection with what is stated above, contains this language: " The defense did not enter into all the particulars of what occurred at the field, but put in evidence a portion of it. The State's counsel, on cross-examination, proposed to go into the particulars of what occurred in the field. To this the defendants objected. The court overruled the objection, permitted the State to prove the particulars, and the defendants excepted."

There are two reasons why there is nothing in this objection : *First*, if illegal evidence be allowed to go to the jury, it is not error to permit it to be rebutted with illegal evidence. *Findlay v. Pruitt*, 9 Por. 195; 1 Brick. Dig. 889, § 1225. *Second*, when part of a conversation, or part of a transaction, is put in evidence, the opposing party may rightfully call for the whole conversation or transaction.—*Ib.* § 1217.

There was testimony before the jury that Ben. Gibson was the aggressor, by using the first provoking remark, and by striking the first blow. On the other hand, there was testimony which conflicted with this. It was for the jury to determine which line of the testimony they would believe; and the court, no matter what was the disparity in the number, or even in the manner of opposing witnesses, was in no sense charged with the duty of deciding this controverted issue of fact. It was a question of fact for the jury, not of law for the court. We have made this statement, not because there is anything in the record which tends to show this cardinal rule was violated in this case, for we do not affirm there was anything which would authorize such criticism.

Several charges are asked by defendants, and were refused, and exceptions to the rulings were severally reserved. Charge No. 1 was rightly refused, for two reasons : *First*, it seeks to

justify Sam. Gibson's blow in defense of his brother, on the ground, in part, that be, Sam., "neither provoked, nor brought on the difficulty," and ignores all inquiry as to whether Ben. Gibson was the aggressor. Sam. could not strike to relieve his brother of peril, unless the brother was free from fault in bringing on the difficulty which placed him in peril.—*Kirby v. State*, 89 Ala. 63; *Waller v. State, Ib.* 79. *Second*, the charge assumes as fact that " the assault was made by John Smith on Ben. Gibson," whereas there was much testimony tending to show that Ben. Gibson was the assailant, and that Smith fought in defense.

Charges 3 and 7 are calculated to confuse and mislead, and were rightly refused.—*Smith v. State*, 88 Ala. 23. Charge 4 is somewhat argumentative and confusing.—*Long v. State*, 84 Ala. 1. Charge 6 is somewhat imperfect, in that it does not entirely free Gibson from secondary fault in bringing on the difficulty. Charges 2 and 5 are severally free from error, and the trial court erred in not giving them.—*Cleveland v. State*, 86 Ala. 2; *DeArman v. State*, 71 Ala. 329; *Mitchell. v. State*, 60 Ala. 26.

Reversed and remanded.

