# Compton v. State.

## Indictment for Murder.

1. *Indictment for murder; charge upon manslaughter.*—Where an indictment comprehends every degree of criminal homicide, and a conviction for murder is sought, it is proper for the court to charge the jury, not only upon the constituents of murder, but also upon the characteristics and elements of manslaughter, unless there is an entire absence of all evidence having a tendency to reduce the crime to manslaughter; and when there is not an absence of evidence having such a tendency, it is error for the court to refuse a charge instructing the jury in reference to manslaughter.

2. *Charge of court to jury; as to favorable and unfavorable conclusions from the evidence.*—A charge is properly refused which instructs the jury that "if there be two reasonable constructions which can be given to facts proven, one favorable and the other unfavorable to a party charged with crime, it is the duty of the jury to give that which is favorable rather than that which is unfavorable to the accused party."

3. *Malice; may be inferred from use of deadly weapon.*—The conclusion as to whether or not there was malice in the commission of a homicide is for a jury to draw from a consideration of all the evidence; but the jury may infer malice from the use of a deadly weapon alone, unless the evidence which proves the killing excludes such inference, and the burden is upon the defendant to rebut the presumption thus arising by other evidence, and if this burden is not met, the presumption continues against the defendant.

4. *Homicide; when charge as to manslaughter in second degree erroneous.*—Where in a trial under an indictment for murder it is shown by the evidence that the blow which resulted in the killing was aimed at the person slain, the defendant cannot be convicted of manslaughter in the second degree, but the homicide was either murder in one of the degrees, or manslaughter in the first degree, or excusable; and in such a case, a charge which instructs the jury that if the jury are

[Compton v. State.]

not convinced beyond all reasonable doubt that the defendant was actuated by malice towards the deceased they could not convict him of murder in either degree, and if not wholly excusable, he "would be guilty of no higher grade of offense than manslaughter in the first or second degree," is erroneous and properly refused.

5.  *Same; charges ignoring duty of retreat and fault in bringing on the difficulty—.* Where on a trial under an indictment for murder, there is evidence tending to show that the defendant brought on the difficulty, a charge which instructs the jury that "if the circumstances surrounding the killing were such as to render it a matter of reasonable doubt whether the defendant was actuated in what he did by the principle of self-preservation, instead of malice, then he can not be convicted of murder in either degree, but only of manslaughter," is erroneous and properly refused in that it ignores the evidence tending to show fault on the part of the defendant in bringing on the difficulty, and also ignores the duty of the defendant to have retreated, if he could have safely done so.

6.  *Same; there must be malice to constitute murder; charges thereon.* There can not be murder without malice; and on a trial under an indictment for murder, charges which instruct the jury that "if the killing in this case was not malicious, then the defendant would not be guilty of murder in either degree," and that "if the killing in this case was without malice, then the defendant would not be guilty of a higher grade of offense than manslaughter in the first degree, even if he is not wholly excusable," assert correct propositions, and their refusal is erroneous.

7.  *Same; when produced by insult, murder in second degree.*—Mere words, however offensive, cannot reduce a homicide to manslaughter; and where a homicide is traceable solely to the influence of passion enkindled by insult, offensive words or provocation, which were reasonably calculated to engender such passion and provoke sudden resentment, the killing is not murder in the first degree, because it was not willful, malicious, deliberate and premeditated, but is murder in the second degree.

8.  *Same; charges as to reasonable doubt.*—On a trial under an indictment for murder, a charge is free from error which instructs the jury that "if they have a reasonable doubt as to whether the killing was done deliberately or as to whether it was done premeditatedly, then they could not find the defendant guilty of murder in the first degree; and if they have a reasonable doubt as to whether the killing was done in malice, then they could not find the defendant guilty of murder in either degree, but only of manslaughter at the most; and if, after considering all the evidence, the jury have a reasonable doubt as to the defendant's guilt of manslaughter arising out of any part of the evidence, then they should find the defendant not guilty of any offense;" and such charge should be given upon request.

9.  *Charge to the jury; singling out particular portions of the evidence.* Charges to the jury which make certain portions of the evidence a

[Compton v. State.]

basis for their instructions, to the exclusion of the other evidence in the case, and without reference thereto, are erroneous and properly refused.

10. *Same; reasonable doubt as to who provoked the difficulty.*—On a trial under an indictment for murder, a charge which instructs the jury that "if, after considering all the evidence, they have a reasonable doubt as to who provoked the difficulty, then the jury should find that the defendant did not provoke the difficulty," is erroneous, since notwithstanding such reasonable doubt, the defendant may not have been free from fault in precipitating the fatal termination of the difficulty, and if each party was equally at fault in provoking it, the defendant would not have been faultless.

11. *Homicide; self-defense.*—The fact that a defendant, at the time of the commission of a homicide, was in imminent peril from the deceased, or appeared to be so, is not alone a justification of the killing; but to excuse the killing, the defendant must go further, and show by the evidence that at the time of the fatal blow there was no reasonable means of escape or retreat.

APPEAL from the Circuit Court of Marshall.

Tried before the Hon. JAMES A. BILBRO.

The appellant, Lucien Compton, was jointly indicted with one Brash Snead for the murder of Chap Browning, by shooting him with a pistol. On motion of the defendant there was a severance, and upon his being tried alone Lucien Compton was convicted of murder in the first degree, and sentenced to the penitentiary for life.

The first of the three witnesses who saw the homicide committed, William Browning, a brother of the deceased, testified, that he and deceased had been working together in the field, until about 3 o'clock on the day of the killing; that at that hour they quit work and went to their house, close by, and soon left, going to one Harris', to get some meat; that the direction they took carried them near or by the house of Brash Snead, where defendant lived; that they met said Snead in the road with a shot gun, when an unimportant interview passed between deceased and Snead, and as the deceased and witness were about to proceed on their way, Snead asked deceased about some tales he had heard he, deceased, had told concerning his, Snead's, wife, which deceased denied, when Snead proposed to go to his, Snead's, house, near by, where defendant also lived to see defendant about it, to which deceased consented, saying he had nothing against Compton, nor did he suppose Compton had anything against him; that the three went back to

[Compton v. State.]

a point near the house of Isaac Snead, when Brash Snead
called defendant, who answered from the field; that in
a few minutes defendant came up from the direction of
the field, and when he got within about twenty steps of
where the party were standing, defendant said "he was a
man" and pulled out his pistol, and deceased replied, he
was a man too, to which defendant replied: "If you open
your mouth or part your lips, I will shoot your brains
out," and immediately fired, striking deceased in the
head and killing him; that while witness was trying to
raise his brother up, defendant fired another shot, and
then remarked to Brash Snead: "That's the way I do
them," and said, "Let's go." A pistol was found in
deceased's right-hand pants pocket.

Brash Snead testified that he was going to look for
some hogs that afternoon, and had his gun with him,
when he met the two Brownings, about 3 o'clock, about
at the place detailed by the other witness, and after
some conversation, he asked deceased about some talk he
had heard that deceased had had about his, witness's,
wife, and mentioned what it was, when deceased said it
was a d—d lie, and asked Snead who told him, and he
said defendant had. Deceased then asked where Comp-
ton was, and being told that he was at the house of
Isaac Snead, he proposed to go and see him about it;
that they went to Isaac Snead's gate, and at the request
of the deceased, witness called defendant, who came
from the field in a few minutes, and walking up to de-
ceased, asked him if he had told John Snead, that he,
defendant, had told a d—d lie, when deceased said he
had not, and defendant proposed to go and see John
about it, and they started together towards where John
was in the field, William Browning and witness being
in the rear; and after proceeding a few steps, deceased
stopped, facing defendant and said, using an oath, that
he would not go further. Defendant then said, "Then
you say I told a d—d lie," and deceased replied with an
oath, that he did, and ran his hand in his right pants'
pocket, and thereupon defendant shot him, but he did not
reach for his pistol until deceased had gotten his hand
in his pocket. Compton left, and witness did not see
him any more until after he was arrested. This witness
is a co-defendant in the same indictment with defendant
for the murder of said Browning.

The defendant on his examination stated the meeting about as the witness Snead had done, and said that coming up to the party, he walked up to the deceased and said to him: "I thought you were a man, Chap," to which deceased replied: "I am a man, and nothing else," to which defendant replied: "You have not been living up to it, you have given me the G—d d—n lie, and you haven't proven it." Deceased replied: "I haven't done it." Defendant replied: "I say you have; will you go with me and see John?" and deceased replied, "Yes, I will go to John's with you;" that they started up to where John was, deceased walking on defendant's left side, and when they had gone eight or ten steps, deceased stopped and turned towards defendant and said: "I am not going a d—d step further; I have done all the talking I am going to, with Brash," to which defendant replied: "Then you say I have told a G—d d—n lie?" and deceased replied: "Yes,"—using an oath—"I do say you have told a d—d lie," and at the same instant ran his hand in his pocket, and thereupon defendant drew his pistol and shot him. He also testified, that the second shot he fired was accidental, and went almost straight up; that he got his clothes and left, going to Franklin county, Ga. He denied the remark attributed to him by William Browning, as made to Brash Snead after he had killed deceased. The evidence tended to show, that the matter about which deceased said defendant told a lie, was about a rumor in the community, that a mad dog had bitten some children, and that before the difficulty John Snead had told defendant that deceased had said that he, defendant, had told a lie about it. There was also evidence tending to show, that defendant had been told that deceased was carrying a pistol for him, and he was warned that deceased might attack him.

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1) "The court charges the jury that it is a well-settled rule of law that if there be two reasonable constructions which can be given to facts proven, one favorable, and the other unfavorable to a party charged with crime, it is the duty of the jury to give that which is favorable rather than that which is unfavorable to the accused

[Compton v. State.]

party." (2.) "The court charges the jury that they are not warranted in drawing the conclusion of malice from the use of a deadly weapon alone, or from any other one fact, but the conclusion as to whether or not there was malice, it is for the jury to draw, and they are not warranted in singling out any one fact and inferring malice or any other necessary ingredient of the offense therefrom." (3.) "The court charges the jury that if they believe from the evidence that the defendant knew that Browning was carrying a pistol for him and was mad with him, and had been informed that Browning was liable to attack him, then, defendant was not required to leave his business in order to avoid Browning, but might arm himself for defense against such apprehended attack and await developments." (4.) "Before the defendant can be convicted of murder in either degree, it is indispensable that the existence of malice should be proved by the State beyond all reasonable doubt, and if after considering all the evidence, it leaves the mind of the jury in such a state that they can not say they feel an abiding conviction to a moral certainty that defendant was actuated by malice towards the deceased, then defendant cannot be convicted of murder in any degree, and if not wholly excusable would be guilty of no higher grade of offense than manslaughter in the first or second degree." (5.) "The court charges the jury that if the circumstances surrounding the killing were such as to render it a matter of reasonable doubt, whether the defendant was actuated in what he did by the principle of self-preservation instead of malice, then he can not be convicted of murder in either degree, but only of manslaughter at most." (6.) "The court charges the jury if the killing in this case was not malicious, then the defendant would not be guilty of murder in either degree, even if he were not wholly excusable." (7.) "The court charges the jury that if the killing in this case was without malice, then defendant would not be guilty of a higher grade of offense than manslaughter in the first degree, even if he is not wholly excusable." (8.) "The court charges the jury that if the jury believe from the evidence that the killing in this case was the result of passion suddenly aroused on reasonable provocation, and not the result of malice, then the jury can not find the defendant guilty of murder in either degree, and

they can not find him guilty of either degree of manslaughter, unless the State has shown beyond all reasonable doubt that the killing was done with a criminal intent.'' (9.) ''The court charges the jury that a killing in sudden passion aroused by sufficient provocation is not a malicious killing, and killing resulting from such passion and not from malice is not murder either in the first or second degree.'' (10.) ''The court charges the jury that if they have a reasonable doubt as to whether this killing was done deliberately or as to whether it was done premeditatedly then they could not find the defendant guilty of murder in the first degree, and if they have a reasonable doubt as to whether the killing was done in malice, then they could not find the defendant guilty of murder in either degree, but only of manslaughter at the most, and if after considering all the evidence the jury have a reasonable doubt as to the defendant's guilt of manslaughter arising out of any part of the evidence, then they should find the defendant not guilty of any offense.'' (11.) ''Although the jury may believe beyond a reasonable doubt that the defendant provoked the difficulty, or that when he fired the fatal shot he was in no danger from the deceased, or that he could have retreated and thereby have avoided danger, if there was any danger, which he did not do, yet it does not follow as a necesssary consequence from such a finding that the defendant is guilty of murder in either the first or second degree, but under such circumstances it is the province of the jury to determine of what degree of criminal homicide the defendant is guilty.'' (12.) ''The court charges the jury that a killing in self-defense is what is known as an excusable homicide ; and in order to make out such a defense it is not necessary that the defendant should be entirely free from fault.'' (13.) ''The court charges the jury that if they find that the defendant approached the place where the deceased man and Brash Snead and Wm. Browning were standing, and made a remark to the deceased about his having thought the deceased was a man, but that in doing so he had no intention of provoking or raising a difficulty with the deceased, and he was otherwise free from fault in bringing on the difficulty, then the jury must find that the defendant was without fault in bringing on the difficulty.'' (14.) ''The court charges the jury that if after considering all

the evidence they have a reasonable doubt as to who pro-
voked the difficulty, then the jury should find that the
defendant did not provoke the difficulty; and if after con-
sidering all the evidence they have a reasonable doubt
as to whether the defendant was in danger of great bod-
ily harm at the hands of deceased, when the fatal shot
was fired, then they should find that he was in danger
of great bodily harm; and if after thus considering the
evidence they have a reasonable doubt as to whether
there was any other reasonable means of escape, then
the jury should find that there was no other reasonable
means of escape, and they should acquit the defendant."
(15.) "Unless the State has proven to the jury beyond
all reasonable doubt that the defendant provoked the
difficulty, and if the defendant has raised in the minds
of the jury a reasonable doubt growing out of the evi-
dence as to whether he fired the fatal shot to repel an
assault, which deceased was making upon him, which
was calculated to produce a reasonable belief of danger
to defendant's life, and has thus raised a reasonable
doubt as to whether there was any other reasonable
means of escape besides to shoot the deceased, then the
defendant has made out a case of self-defense, and the
jury should acquit him." (16.) "The court charges
the jury that if at the time of the difficulty the defend-
ant was in danger of losing his life or of sustaining great
bodily injury at the hands of the deceased, or if the cir-
cumstances surrounding the defendant at the time of the
killing were such as to create in the mind of a reasonable
man the honest belief that he was thus in danger, and
if the circumstances were such as to impress upon the
mind of a reasonable man the belief that he could not
escape without increasing his danger and under these
circumstances the defendant shot and killed the deceas-
ed, then the jury should find the defendant not guilty,
unless the State has proven to the jury beyond all rea-
sonable doubt that the defendant was the aggressor in
the difficulty, and should the jury find that the defend-
ant was the aggressor it does not follow as a necessary
consequence from such a finding that the defendant is
guilty of murder in either degree, but it would be the
province of the jury to say of what grade of homicide,
if any, the defendant is guilty." (17.) 'The court
charges the jury that if when the fatal shot was fired

[Compton v. State.]

the deceased was about to make an assault upon the defendant with a deadly weapon, and that the deceased and the defendant were in such perilous proximity that to have undertaken flight would have increased his peril, then defendant was under no legal obligation to undertake flight." (18.) "The court charges the jury that the burden of proof is upon the State to prove the defendant's guilt beyond all reasonable doubt; and when the defendant sets up self-defense as an excuse for the killing he is not required to prove the truth of his defense to the satisfaction of the jury. They must acquit the defendant if there is a reasonable doubt growing out of the evidence as to the truth of his defense, though it may not be proved to the reasonable satisfaction of the jury."

O. D. STREET, for appellant. 1. Manifestly the court should have charged the jury upon the law of manslaughter in the first degree. There was evidence of insulting and abusive language addressed to the defendant by the deceased immediately before the shooting, accompanied by acts indicating a purpose on the part of the deceased to assault the defendant in a deadly manner. Under this evidence it should have been submitted to the jury to say whether the killing was the result of passion suddenly aroused upon reasonable provocation without the lapse of a sufficient cooling time.—*Ex parte Warrick*, 73 Ala. 57; *Ex parte Brown*, 65 Ala. 446; *Flanagan v. State*, 46 Ala. 703; *Bonnard v. State*, 7 S.W. Rep. 862; *Stewart v. State*, 78 Ala. 436; *Judge v. State*, 58 Ala. 406; 9 Amer. & Eng. Encyc. of Law, 582. There was also evidence from which the jury might have found that the deceased and the defendant were engaged in a mutual combat at the time of the killing. If a mutual intent to fight exists there is a mutual combat, although the first blow kills one of the parties. 9 Amer. & Eng. Encyc. of Law, 585; *Tate v. State*, 48 Ga. 37; *Cates v. State*, 50 Ala. 166; Clark's Manual, § 438.

2. Charge number one should have been given. It is a statement of a truism in criminal law which is recognized by all judges and law writers. This court has frequently approved charges asserting substantially the same proposition.—*McAdory v. State*, 62 Ala. 155; *Mose v. State*, 36 Ala. 211; *Joe v. State*, 38 Ala. 422.

3.   Charge number 2 should have been given.   When
all the facts attending the killing are in evidence, the
jury is not warranted in singling out one fact and infer-
ring malice or any other ingredient of the offense there-
from, but malice *vel non* must be gathered from the whole
evidence.—*Eiland v. State*, 52 Ala. 322; *Martin v. State*,
47 Ala. 564.

4.   Charge number 3 should have been given.   It is
not abstract, there being evidence to support each of its
hypotheses.   Without instructions upon this point the
fact that defendant was armed was liable to prejudice his
case in the minds of the jury.—*Perry v. State*, 94 Ala. 24.

5.   Charges 4, 5, 6, 7 and 10 may be treated together
as they assert substantially the same proposition, viz.,
that unless the killing was malicious the defendant would
not be guilty of murder in either degree.   The ground
upon which the court refused these charges was that they
were abstract.   Whether this was the precise view taken
by the court of the question or not, it is manifest that
some such anomalous doctrine is necessarily involved in
the refusal of these charges.   It involves the solecism of-
ten repudiated by this and other courts that there can
be a malicious killing in self-defense.   The precise ques-
tion arose in *Martin v. State*, 47 Ala. 564, upon a charge
given for the State.   It was then held that though the
killing is committed with a deadly weapon, the legal pre-
sumption of malice arising therefrom ceases, or is sus-
pended, the very moment any evidence whatever tending
to prove a case of self-defense is introduced, and that
instantaneously upon the introduction of such evidence,
the question of malice *vel non* becomes one of the facts to
be determined by the jury from the whole evidence un-
aided by any presumption of law.   The same doctrine is
laid down by the following authorities :—*Beasley v. State*,
50 Ala. 149; *Eiland v. State*, 52 Ala. 322; *Hampton v.
State*, 45 Ala. 82; *Stokes v. People*, 13 Amer. Rep. 492.

6.   Charges 8 and 9 correctly state the law of a killing
in a sudden passion, and should have been given.

7.   The court erred in refusing charges 14, 15, 16, 17
and 18.—*DeArman v. State*, 71 Ala. 351; *Harris v. State*,
96 Ala. 24; *Wacaser v. People*, 23 Amer. St. Rep. 683;
*Stokes v. People*, 13 Amer. Rep. 492.

WILLIAM C. FITTS, Attorney-General, for the State.—1.

3

[Compton v. State.]

The trial court did not err in refusing to charge on manslaughter—9 Amer. & Eng. Encyc. of Law, 741--742 and notes ; *Seams v. State*, 84 Ala. 410 ; *DeArman v. State*, 71 Ala. 351.

2. Charge number one, asked by defendant and refused, may be a truism, but it does not necessarily make a correct charge. Substantially this proposition was held improper in *Gibson v. State*, 91 Ala. 64 ; *Toliver v. State*, 94 Ala. 111 ; *Fowler v. State*, 100 Ala. 96.

3. Charge number two was not good. Malice is inferred from the use of a deadly weapon, unless the inference is destroyed by the evidence, which is not the case here—*Young v. State*, 95 Ala. 4.

4. Charge number three, in support of which defendant cites *Perry v. State*, 94 Ala. 25, is not proper. Had the defendant been without fault, the charge no doubt would have been a good one. "If," says Judge Stone in the Perry case, *supra*, "when approached menacingly, not being within his dwelling, there was apparently reasonable opportunity for escape by flight, then it would be and was his duty to so escape. This because of the law's imperative command that human life shall not be taken unless there is a present necessity, real or apparent, to strike in defense of one's own life. All these defensive rights are hinged on the condition that the party resorting to them must be free from fault in provoking or bringing on the difficulty."—*Rutledge v. State*, 88 Ala. 85.

5. Charge four is faulty in the employment of the sentence "and if not wholly excusable, would be guilty of no higher grade of offense than manslaughter in first or second degree." It is a shrewd argument and should have been refused. Charge five is faulty in several respects. It ignores fault in bringing on the difficulty, and in its present shape would have been misleading. Charge six is faulty for the same reason that four was rejected—argumentative and incomplete. The same may be said of charges 7 and 10. The inference of malice, vitalized by the use of the pistol, was strengthened and confirmed by the evidence, rather than diminished.

6. Charge eight is faulty because it permits no inquiry as to who brought on the difficulty. The phrase "sufficient provocation" is not sufficient. There is such a thing as provoking a provocation.—*Smith v. State*, 103 Ala. 4. Passion provoked by mere words can not re-

duce homicide below the crime of murder in the second
degree. Passion without reasonable cause will not be
taken into account in determining the degree of murder.
*Reese v. State,* 90. Ala. 624.

7. The other charges refused by the court were faulty,
and were, therefore, properly refused.—*Gibson v. State,*
91 Ala. 64; *Hornsby v. State,* 94 Ala. 55.

HARALSON, J.—The court in its oral charge, very
correctly, it is not disputed, charged the jury on the law
of murder. At its conclusion, the defendant in writing
asked the court to charge the jury as to the law relating
to manslaughter in the first degree. The court indorsed
the request ''refused,'' and did refuse to charge upon
that subject. If under the law and evidence of the case,
the jury might have found the defendant not guilty of
murder in either degree, but of manslaughter in the
first degree, it was proper for the court to charge them
upon that phase of the case. We have before now held,
that when an indictment comprehends every degree of
criminal homicide, and a conviction for murder is sought,
the proper rule is to charge upon the characteristics and
constitutents of murder in each of its degrees, and upon
manslaughter also, unless there is an absence of all evi-
dence having a tendency to reduce the offense to man-
slaughter.—*Brown v. The State,* 20 So. Rep. 103; *Pierson v.
The State,* 99 Ala. 153; *DeArman v. The State,* 71 Ala. 351.
That there was no such evidence introduced in this case
we apprehend cannot be safely affirmed.

Charge 1 requested and refused has been repeatedly
condemned by this court, and it need not be considered.
*Gibson v. The State,* 91 Ala. 64; *Toliver v. The State,* 94
Ala. 111; *Thomas v. The State,* 106 Ala. 19.

The 2d charge requested should not have been given.
The jury may infer malice from the use of a deadly
weapon alone, ''unless the evidence which proves the
killing rebuts the presumption.'' When the facts which
prove the killing do not rebut the presumption which
the law raises, the burden is on the defendant by other
evidence to rebut it, and failing to meet this burden,
the presumption of the law is against him. The charge
contains the instruction, that the conclusion as to wheth-
er or not there was malice, is for the jury to draw, but
certainly it is not without consideration of all the evi-
dence, which necessary instruction the charge does not

contain.—*Sylvester v. The State*, 72 Ala. 206; *Hornsby v. The State*, 94 Ala. 66; *Stillwell v. The State*, 107 Ala. 16.

Charge No. 3 was abstract and misleading. There was no evidence that defendant was required, by what deceased had said or done, to leave his business, nor does the evidence tend to show that he did more than arm himself and await developments.

The court probably refused the 4th charge on two grounds; the first, for the same reason, that in its oral charge, it refused to charge on the law of manslaughter, because under the evidence it was deemed inapplicable to the homicide; and secondly, for the concluding words of the charge, "if not wholly excusable, would be guilty of no higher grade of offense than manslaughter in the first or second degree." For this last instruction the charge was vicious. The blow or injury having been aimed at the party slain, manslaughter in the second degree has no place in the case, and the homicide is either excusable, manslaughter in the first degree, or murder.—*Ex parte Brown*, 65 Ala. 446; *Collier v. The State*, 69 Ala. 247.

The 5th charge ignores the evidence tending to show fault in bringing on the difficulty, and of the duty of defendant to have retreated, if he could have done so safely, and without apparently increasing his peril.—*McDaniel's Case*, 76 Ala. 7; *Gibson's Case*, 91 Ala. 64, *supra; Wilkinson v. The State*, 98 Ala. 7.

Charges 6 and 7 should have been given. The 6th does no more than assert the simple and correct proposition, that there cannot be murder in either degree, where there is no malice; and the 7th is to the same effect, with the additional instruction,—correct as applied to the evidence,—that if not guilty of murder in either degree,—there being an absence, as postulated, of malice,—the defendant could not be convicted, in such case, of a higher degree of guilt than manslaughter in the first degree.

The 8th charge was properly refused, certainly for the reason, that it contains an instruction as to manslaughter in the second degree, in which the criminal intent hypothesized is not involved, and is inapplicable to the case. And as to this charge, and the 9th,—which, without more was an improper instruction, calculated to confuse and mislead,—let it be added, as we have before

held, that "If the insult or provocation is of such a character as is reasonably calculated to kindle passion and provoke sudden resentment, and if the proof shows that the insult or provocation had this effect, and the homicide is traceable solely to the influence of passion kindled by the insult or provocation, then such killing is not willful, malicious, deliberate and premeditated, and is not murder in the first degree, but murder in the second degree. Mere words, however offensive, cannot reduce the offense to manslaugther."—*Ex parte Sloane*, 95 Ala. 24; *Watson v. The State*, 82 Ala. 12.

The 10th charge appears to be free from error, and should have been given. The 11th and 12th are so fatally defective, that they need not be considered.—*McQueen v. The State*, 103 Ala. 13; *Gibson v. The State*, 91 Ala. 64; *Perry v. The State*, 94 Ala. 25.

The 13th singles out the first remark made by defendant to deceased, when he approached him, and makes that the basis for the instruction requested, without reference to what followed in the interview between the parties, tending to show fault on the part of defendant, was argumentative and properly refused.—*Gibson v. The State*, 91 Ala. 64. Besides, it was otherwise faulty. His intention is a fact to be ascertained from what he said and did, and what his conduct fairly implied, and he is answerable therefor, without reference to his real motive secretly entertained.

The 14th was faulty for the reasons that from anything said in the charge, the defendant may not have been free from fault in precipitating the fatal termination. If each party was equally at fault in provoking it, the defendant would not have been faultless; and besides, it is argumentative.

No 15 was not free from fault. It was incumbent on the defendant to show, that at the time there was a necessity to take life, or that the circumstances were such as to impress on the mind of a reasonable person, a reasonable belief that there was such a necessity, and that there was no reasonable mode of retreat or escape.— *Naugher's Case*, 105 Ala. 26; *Wilkins' Case*, 98 Ala. 1. When a defendant has shown, that he was in imminent peril or appeared to be so, as an excuse for killing his adversary, this fact alone does not justify the homicide, unless he further makes it reasonably appear that there

[Dorsey v. The State.]

was no reasonable means of escape or retreat. The proof of the first fact, does not do away. with the necessity of proving the latter, which the charge assumes to be the case, in the use of the words, "and has thus raised a reasonable doubt as to whether there was any other reasonable means of escape besides to shoot," &c., following the postulate of "reasonable belief of danger to defendant's life." From what has been said, the vice of charges 16 and 17 manifestly appear. The effort in the 18th charge to draw the distinction between reasonable doubt and the want of reasonable satisfaction, is argumentative and misleading.

For the errors indicated, the judgment and sentence of the court below are reversed, and the cause remanded.

Reversed and remanded.