# *Ex Parte* Pepper.

## *Assumpsit.*

(Decided December 18, 1913.  64 South. 112.)

1. *Constitutional Law; Construction.*—Nothing appearing to induce a contrary construction, words and phrases used in Constitutions and statutes should be interpreted as having the meaning which popular signification accorded to them when expression was given them.

2. *Same; Re-enactment with Construction; Effect.*—The substantial reproduction of a provision of the organic law, or the re-enactment of a statute is an adoption of the construction which the judiciary has uniformly placed upon it.

2. *Witnesses; Incriminating Self; Civil and Criminal Actions.*—Sections 4057, 6754-5, Code 1907, considered in the light of section 6, Constitution 1901, and it is held that the privilege of refusing to give evidence applies only to a criminal prosecution for a public offense, and hence, in an action upon a fire policy, the insurer may be compelled to answer interrogatories as to whether it was a member of an Underwriters' Association, even though membership in such an association would impose upon the insurer a penalty as prescribed by section 4595, Code 1907, as amended by Acts 1911, p. 316; this construction being strengthened because of the fact that the provision in the Constitution of 1901, was adopted after judicial construction of a similar provision in an earlier constitution holding that the privilege did not extend to an action for a purely civil penalty.

CERTIORARI to Court of Appeals.

Action by J. H. Pepper against the American Central Insurance Company. A default judgment for failure to answer interrogatories was reversed and remanded by the Court of Appeals on defendant's appeal (9 Ala. App. 191, 62 South. 397), and plaintiff brings certiorari. Judgment of the Court of Appeals reversed, and cause remanded.

The following is interrogatory No. 2: "Did the defendant, on the 6th day of March, 1912, or at any other time from the 6th day of March, 1912, up to and including the day you filed your answers to these interrogatories, belong to, or was the defendant a member

of, or in any way connected with, the Southeastern Underwriters' Association of Atlanta, Ga., or any other place? Has the defendant made any agreement or any understanding with any other person, corporation, or association engaged in the business of insurance, as agent or otherwise, about any particular rate or premium which should be charged or fixed for any kind or. class of insurance risk? Does defendant know anything about the Southeastern Underwriters' Association of Atlanta, Ga., or any other place? What business has the Southeastern Underwriters' Association been engaged in during the year 1912, and prior to that time? Has defendant ever had any transaction of any kind, or any business relation, or any connection in any way, shape, form, or fashion with the Southeastern Underwriters' Association of Atlanta, Ga., or any other place? If so, what relations has defendant had with the Underwriters' Association? Has there ever any letters passed between the Underwriters' Association mentioned and defendant? If so, attach all the letters which defendant has ever received from said association, and mark and refer to them, and each of them, in your answers, so that they can be identified. Has defendant ever written any letters, or caused any letters to be written to the Southeastern Underwriters' Association of Atlanta, Ga.? and, if so, and defendant kept a copy of such letters, attach a copy of each and every letter that defendant has ever written or caused to be written to said association of Atlanta, Ga., or any other underwriters' association by that name, and mark and refer to them in your answers, so that they may be identified. Did the defendant have, or has defendant had, on the 6th of March, 1912, or at any time since the 6th day of March, 1912, a contract of any kind with the Southeastern Underwriters' Association of Atlanta,

Ga., or with any other tariff association? If so, attach a copy of such contract or contracts to your answers to these interrogatories, and mark the same, and refer to them in your answers, so they can be identified."

RIDDLE & BURT, for petitioner. The granting of the judgment was a matter within the discretion of the court.—*Goodwin v. Harrison,* 6 Ala. 438; *Poole v. Harrison,* 18 Ala. 518; *Sparks v. Reeves,* 51 South. 574. It was a question for the court and not for the defendant as to what interrogatories should or should not be answered.—*So. Ry. v. Bush,* 122 Ala. 470. The provision of section 6, Constitution 1901, refers to criminal prosecutions, and not to civil actions for penalty.—*Miller v State,* 110 Ala. 69; *So. Ry. Co. v. Bush,* supra.

KNOX, ACKER, DIXON & SIMS, for appellee. There can be no question but that section 4595, imposes a penalty.—*Continental I. Co. v. Parks,* 142 Ala. 650; *F. F. I. Co. v. Hellner,* 155 Ala. 447. To have answered the interrogatories would have subjected defendant to a criminal prosecution under section 7581, Code 1907, and this cannot be done under section 6, Constitution 1901.—*So. Ry. v. Bush,* 122 Ala. 470; 116 U. S. 616; 142 U. S. 547; 14 Cyc. 362.

McCLELLAN, J.—We appropriate the statement of the facts, disclosing the question, formulated by the Court of Appeals on the appeal to that court; "This was an action on a fire insurance policy. The complaint alleged that at the time of the making of the policy sued on, or subsequently and before the time of the trial of this cause, the defendant was a member of or in some way connected with a tariff association, or such like thing, or that the defendant had made an

agreement or had an understanding with some other person, corporation, or association engaged in the business of insurance, as agent or otherwise, about a particular rate of premium which should be charged or fixed for some kind or class of insurance risk (Code, § 4594; Acts 1911, p. 316) ; and it claimed, in addition to the amount named in the policy sued on, 25 per cent. of such amount. The plaintiff filed interrogatories to be propounded to the defendant, pursuant to the statute authorizing one party to a suit to take the testimony of the other party.—Code, § 4049 et seq. The defendant declined to answer interrogatory 2 (which will be set out by the reporter), upon the ground, among others, that to answer that interrogatory would tend to expose it to the penalty or forfeiture of 25 per cent. which was claimed in the complaint. The court ruled that the defendant was not entitled to decline to answer that interrogatory, and, upon the defendant's continued refusal to answer it, granted the motion of the plaintiff for judgment against the defendant by default for failing and refusing to answer separately and severally each question propounded in that interrogatory."

Code, § 4057, provides: "Under the provisions of this article [i. e., Examination of Parties by Interrogatories], the party is bound to answer all pertinent interrogatories, unless by the answer he subjects himself to a criminal prosecution."

The act approved April 7, 1911 (Acts 1911, pp. 316, 317), amendatory of Code, §§ 4594 and 4595, is as follows:

"Section 1. Be it enacted by the Legislature of Alabama, that sections 4594 and 4595 of the Code of Alabama be amended so as to read as follows: '4594 (2619). Contract of Insurance Made by Company Belonging to Tariff Association Construed to Add Twenty-Five Per

Cent. to Face of Policy.—Every contract or policy of insurance made or issued since the eighteenth day of February, 1897, shall be construed to mean that in the event of loss or damage thereunder, the assured or beneficiary thereunder, in addition to the actual loss or damage suffered, recover twenty-five per cent. of the amount proven to be due the assured under such policy or policies, any stipulation or provision in such contract or policy to the contrary notwithstanding, if at the time of making such contract or policy of insurance or subsequently before the time of trial, the insured belonged to, or was a member of, or in any way connected with, any tariff association or such like thing by whatever name called or who had made any agreement or had any understanding with any other person, corporation or association engaged in the business of insurance as agent or otherwise about any particular rate of premium which should be fixed or charged or fixed for any kind or class of insurance risk; and provided the right of action shall accrue fifteen days after the proof of loss had been filed with the home office of the insuring company, or in the hands of a duly qualified agent of the company. Provided always, however, that the penalty named herein shall not be enforced against any company which pays or offers to pay the assured or the beneficiary the full amount of the loss ascertained and proven to be due under the policy or policies, within sixty days after proof of loss. 4595 (2620). Jury or Court Finding Certain Facts Must Add Amount of Penalty to Verdict, etc.—Upon the trial of any action founded upon insurance policies, if it is shown to the reasonable satisfaction of the jury or the court trying the facts, that such insurer at the time of making of such agreement or policy of insurance subsequently before the time of trial belonged to, or was a

[Ex Parte Pepper.]

member of, or in any way connected with, any tariff association or such like thing by whatever name called, either in or out of this state or had any agreement or had any understanding either in or out of the state with any other person, corporation or association engaged in the business of insurance as agent or otherwise about any particular rate of premium which should be charged or fixed for any risk of insurance on any property located in the state of Alabama, they must, if they find for the assured or beneficiary in addition to the actual damages, assess and add twenty-five per cent. of the amount proven to be due the assured under such policy or policies and judgment shall be rendered accordingly whether claimed in complaint or not.' "

The general purpose of this law and its punitive character was thus stated in *Continental Ins. Co. v. Parks,* 142 Ala. 650, 39 South. 204: "The manifest purpose of the statute was to prevent monopoly, and to encourage competition. The evil thus intended to be remedied was one violative of public policy as defined by the common law. The statute only imposes a penalty on what was already offensive to public policy. It did not make that which was innocent an offense, but simply provided a punishment for doing that which was already prohibited. In other words, it is a legitimate exercise of the police power of the state." See, also, *Firemen's Fund Ins. Co. v. Hellner,* 159 Ala. 447, 49 South. 297, 17 Ann. Cas. 793.

The provision of the Constitution of this state (section 6) forbidding compulsory self-incrimination is this: "That in all criminal prosecutions," the accused "shall not be compelled to give evidence against himself."

The concrete question is whether to compel the defendant to respond to the matter sought by interrogatory 2 would violate the privilege guaranteed by the or-

ganic law—whether the proceeding in which matter is sought by the interrogatory is a *criminal prosecution* in which the privilege against compulsory self-incrimination is·assured.

The phrase "criminal prosecution" (criminal proceedings) was the subject of consideration by this court in *Miller v. State,* 110 Ala. 69, 86, 87, 20 South. 392, decided in 1896. The proceeding there under view was for *bastardy.* It ran in the name of the state of Alabama. —Code, § 6370   *Bastardy* was defined then, as now, in the Criminal Code, and the issuance of a *warrant,* the *arrest,* and *bail* of the accused were· provided for.— Code 1907, § 6364. Upon the adjudication of the paternity of the accused, bond, in an ascertained sum, to support the child is exacted of him in favor of the state. —Code 1907, § 6376. On failure to give the bond exacted, a money judgment is rendered, and the accused is "sentenced to hard labor for the county for one year, unless in the meantime he executed the bond required, or pay the judgment and costs."—Code 1907, § 6377. Sections 6379 and 6380 provide for discharge from "imprisonment" upon contingencies defined. On the trial of *Miller* a question arose which required this court to. decide whether the proceeding for *bastardy* was a *criminal prosecution* or criminal proceeding. The court stated the concrete inquiry, and determined it to this effect: "During the argument, the solicitor referred to the fact that the defendant, though competent in his own behalf, had refused to testify. The statute declares that in all criminal prosecutions the defendant, at his own request, may be a competent witness, and his failure to testify shall not be the subject of comment by counsel.—Cr. Code 1886, § 4473. A proceeding in *bastardy, though penal in its character and quasi criminal, is not a criminal prosecution within the meaning of the*

*statute.* The weight of authority holds to the view that the action is a civil proceeding.—2 Am. Eng. Ency. of Law, 144. There is no such statutory provision relative to the refusal of parties to testify in civil cases. We are of the opinion the exception was not well taken." (italics supplied.)

The affirmative ruling in *Miller's Case* was that a proceeding penal in character and quasi criminal, even though prosecuted by the state's representative (the solicitor), in the name of the state, and imposing, upon contingencies, *hard labor for the county and imprisonment,* was not a *criminal prosecution.*

In *L. & N. R. R. Co. v. Hall,* 91 Ala. 112, 118, 119, 8 South. 371, 373 (24 Am. St. Rep. 863)—decided in 1891—this court, after stating, as upon authorities cited elsewhere pronouncing the general rule which forbids a discovery from the adversary party "which will expose him to a criminal prosecution, or to a *penal recovery,*" rested its conclusion upon the language of our statute (now section 4057), thereby necessarily eliminating, as a basis for invoking the privilege against self-incrimination, a proceeding in which a *penal recovery* was sought.

The case of *Sou. Ry. Co. v. Bush,* 122 Ala. 470, 488, 489, 26 South. 168, bears immediately upon the question. There the action was under our "Act to prevent homicides."—Code 1907, § 2486. The purpose of the act was accurately foreshadowed in the quoted title, "and this it proposed to accomplish by such pecuniary mulct as the jury deem just."—*R. & D. R. R. Co. v. Freeman,* 97 Ala. 289, 11 South. 800. The damages allowable are punitive *only,* not compensatory in any sense—promoting and effecting the *punishment* of the culpable defendant.—*Freeman's Case, supra,* among others.

Interrogatories were propounded by the plaintiffs (administrators) to the defendant. The objection was made to the introduction in evidence of the answers (made by the engineer), "on the ground that defendant could not, in a proceeding of this character, be legally and constitutionally compelled to answer the interrogatories." The argument, stated by the court, was that the proceeding was designed, and, if sustained, led to a recovery "in the nature of a penalty." The court correctly interpreted the view prevailing in the Supreme Court of the United States, as expressed in *Counselman v. Hitchcock*, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, and *Boyd v. U. S.*, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, upon this matter of privilege under the federal Constitution and laws, and, while conceding to the deliverances of that court great weight as authority, well observed that the opinion there entertained was not binding upon the state courts.—*Thorington v. Montgomery*, 147 U. S. 490, 13 Sup. Ct. 394, 37 L. Ed. 252. Thereupon, proceeding to determine the question, the court (in *Bush's Case*) said: "These constitutional provisions, thus construed, simply declared the ancient rule of the common law, and prohibited any change in the rule by legislation. It is also an ancient and universal rule that a court of equity will not entertain a bill to compel a discovery in aid of an action to recover a penalty or forfeiture, or of any action not purely of a civil nature.—2 Story, Eq. Jur. § 1494. And the construction given to our statutory provisions for a discovery at law is that they created a right to a discovery in civil suits at law which, in the absence of statute, could be obtained only in equity.—*Cain Lumber Co. v. Standard Dry Kiln Co.*, 108 Ala. 346 [18 South. 882]. If the *damages recoverable in an action of this character were, strictly speaking a penalty imposed*

*by law, we would be inclined to give to our constitutional provision on the subject the same construction that has been placed on the similar provision of the federal Constitution,* and to hold that the defendant could not be compelled, even by statute, to give or furnish evidence in aid of a recovery against it. But, while the damages recoverable are udoubtedly, under our former rulings, punitive in their nature, and not compensatory, they are not, in a strict sense, a penalty, nor is the action penal, or quasi criminal, within the meaning of the constitutional provisions as above construed. The statute is remedial, and not penal, and was designed as well to give a right of action where none existed before as to 'prevent homicides,' and the action given is purely civil in its nature for the redress of private, and not public wrongs."

This court, as appears from the italicized words in the quotation from the *Bush Case,* expressly declined to follow and apply the rule prevailing in the Supreme Court, which is that the privilege against self-incrimination embraces all cases where a proceeding, civil or criminal in character, may lead to or invite a penalty or *forfeiture* to satisfy which the property of the party giving the self-incriminatory evidence may be exacted or his restraint of personal liberty effected. The rule established by the *Bush Case,* conformable to the stated doctrine of the *Miller* and *Hall Cases, ante,* is that thus accurately expressed in *Harger v. Thomas,* 44 Pa. 128, 84 Am. Dec. 422: "A criminal prosecution is also defined to 'be a prosecution in a court of justice, in the name of the government, against one or more individuals accused of crime.' * * * The issue is between the government and the prisoner on a question of the guilt or innocence of the latter." This definition of *criminal prosecution* accords with pertinent statements

in the following authorities: *Ely v. Thompson,* 10 Ky. (3 A. K. Marsh.) 70, 74; *Strickland v. Bartow,* 27 Mich. 68; *Cancemi v. People,* 18 N. Y. 128, 136; 12 Cyc. 974. There are, of course, respectable authorities to the contrary. See 3 Wigmore, §§ 2256, 2257. The distinction thus taken finds apt support in Code, §§ 6754, 6755. The former provides that a "public offense is an act or omission forbidden by law, and punishable as provided in this Code." The latter provides that "acts or omissions to which a pecuniary penalty is attached, recoverable by action by a person for his own use, or for the use, in whole or in part, of the state, or of a county or corporation, are not public offenses within the meaning of this Code."

If nothing appears to the contrary, words and phrases employed in Constitutions or statutes should be interpreted as having the meaning popular significations accorded to them when appropriated for expression.—*Mobile Dry Docks Co. v. Mobile,* 146 Ala. 198, 208, 40 South. 205, 3 L. R. A. (N. S.) 822, 9 Ann. Cas. 1229; 8 Cyc. p. 734. And, furthermore, the reordainment, in substantial reproduction, of a provision of the organic law, or such re-enactment of a statute, operates the adoption therewith of the settled construction which the judiciary has placed upon the law.—*Morrison v. Stevenson,* 69 Ala. 450; *Taylor v. State,* 131 Ala. 36, Ala. 36, 39, 31 South. 371; *Wood Dickerson Co. v. Cocciola,* 153 Ala. 555, 45 South. 192; *T. C., I. R. Co. v. Roussell,* 155 Ala. 435, 46 South. 866, 130 Am. St. Rep. 56.

According to interpretation of the pertinent provision of the organic law taken in *Bush's Case, ante,* its reordainment in the Constitution of 1901 invoked the application of the rule last stated. And this view is further supported by this court's interpretation of

*criminal prosecution* or *criminal proceedings* in *Miller's Case, ante.*

The *Bush Case* and that at bar are not, in our opinion, susceptible of being soundly distinguished. In each a pecuniary penalty is the law's imposition. In the former the jury fixes the amount with a view to graduating the punishment. In the latter the amount is *conditionally* stipulated in the statute, though the penalty may be wholly averted by a satisfaction of the assured within a definite period. In neither instance does the recovery go to the state or any governmental authority. In neither is the means afforded to enforce the penalty that with which all are familiar in the prosecution of criminal offenders in this state. The remedy is civil, in essence and form, in each instance. While the form or character of the remedy for enforcement may not be controlling, it is an important factor in determining whether the proceeding is a criminal prosecution under our laws.—*Strickland v. Bartow,* 27 Mich. 68; *State v. Standard Oil Co.,* 61 Neb. 28, 84 N. W. 413, 87 Am. St. Rep. 449.

The action instituted and prosecuted for the recovery of the penalty allowed by the act of 1911 not being a *criminal prosecution within* the provisions of our Constitution or the statute (Code, § 4057), as the trial court ruled, the defendant company could not invoke the privilege against compulsory self-incrimination.

The judgment of the Court of Appeals reversing the trial court in this particular is therefore reversed.

DOWDELL, C. J., and ANDERSON and SOMERVILLE, JJ., concur. MAYFIELD and SAYRE, JJ., concur in the conclusion.