142 So. 105

## MARKER v. STATE.

### 7 Div. 769.

Court of Appeals of Alabama.
March 22. 1932.

Rehearing Denied April 12, 1932.

McCord & McCord, of Gadsden, for appellant.

## 92

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

**BRICKEN, P. J.**

The practice indulged in the trial of this case in the court below, in the reservation of exceptions to the rulings of the court, entails unnecessary labor and consumes much time of the court below, as well as of this court. The law now is, where there is an objection to a question propounded to a witness in the trial of any cause, and the objection is overruled and exception reserved, it shall not be necessary to make a motion to exclude the answer of the witness in order to put the court in error on his rulings on such objection. Gen. Acts of Alabama 1927, pp. 636, 637. The observance of the foregoing rule on the trial of this case would have eliminated innumerable useless exceptions appearing in this record.

This is a proceeding in bastardy wherein one Ruth Burgess made the required affidavit to the effect that she was a single woman and had been delivered of a bastard child in Etowah county, Ala., and that Asa Marker, the appellant, was the father of said child. Having been bound over by the lower court to the circuit court, as the law requires, the solicitor filed a complaint upon which this cause was tried and determined.

By brief of counsel for appellant, it is first insisted that the trial court erred in not allowing the accused two strikes to one for the state in selecting the jury to try this case. This exception is without merit, and needs no other discussion than the mere citation of the following authorities which hold contrary to the insistence of appellant and in accord with the court's ruling. Dorgan v. State, 72 Ala. 173; Hymes v. State, 209 Ala. 91, 95 So. 383; Batson v. State, 216 Ala. 275, 281, 113 So. 300; Smith v. State, 13 Ala. App. 411, 69 So. 406; Owens v. State, 21 Ala. App. 321, 108 So. 654; Royer y. State, 21 Ala. App. 381, 108 So. 652.

In answer to the complaint, the accused interposed the plea of "not guilty," and in addition thereto he pleaded "not guilty by reason of insanity." To the latter, or special plea, the state interposed demurrers which were sustained by the court, and appellant earnestly and strenuously insists in this ruling the court erred to a reversal.

By express provisions of the statute, the defense of "not guilty by reason of insanity" may be specially pleaded in all criminal prosecutions. Section 4573, Code 1923. It is not available in any proceeding other than prosecution for crime. In the instant case, the court disallowed such plea, by sustaining demurrers thereto, on the ground and for the reason that said plea was not a defense to the charge of bastardy, and therefore not a proper answer to this proceeding. This ruling of the trial court presents the question, Is a prosecution for bastardy a criminal proceeding in contemplation of law; that is to say, is it a criminal case in the proper and legal sense which that term implies? If this query were to be answered in the affirmative, it would be conclusive of the point of decision involved, as above stated. We answer that query in the negative. A proceeding in bastardy is not a criminal case. It has never been so declared or designated in any of the innumerable decisions of the appellate courts of this state wherein the question has been treated or discussed. It has often been termed a quasi civil and criminal proceeding. The Latin term "quasi" means "analogous to." This term is used in legal phraseology to indicate that one subject resembles another, with which it is compared, in certain characteristics, but there are intrinsic and material differences between them. In Miller v. State, 110 Ala. 69, 86, 20 So. 392, 397, the Supreme Court held: "A proceeding in bastardy, though penal in its character, and quasi criminal, is not a criminal prosecution within the meaning of the statute. The weight of authority holds to the view that the action is a civil proceeding." See, also, Ex parte Pepper, 185 Ala. 284, 290, 64 So. 112, to the same effect. In Williams v. State, 117 Ala. 199, 23 So. 42, the Supreme Court, through its eminent and lamented Chief Jus-

tice Brickell, held: "A proceeding in bastardy is purely statutory, and is not a criminal case within the meaning of the statute." 1 Hd. Note. The Supreme Court of this state having declared that this character of proceeding is civil, and not criminal, is practically conclusive of the point under discussion. We could, however, if necessity appeared, detail many features and rules of bastardy proceedings which clearly demonstrate it is not a criminal prosecution as contemplated by section 4573 of the 1923 Code, supra. Notably (1) the jury must be selected as in civil cases. Authorities, supra. (2) Comment may be indulged in argument upon the fact that the accused failed to testify in his own behalf. Miller v. State, supra. (3) The rule of evidence and burden of proof is different in a marked degree from that necessary in a criminal prosecution, for, in a bastardy trial, before a jury, the measure of proof is that the jury must be reasonably satisfied from the evidence that the accused is the real father of the bastard child. This is the measure of proof as in a civil case; and is differentiated from the requirement in a criminal case, where before a conviction be had for any crime, the jury must believe from the evidence beyond all reasonable doubt and to a moral certainty that the defendant is guilty. Royer v. State, supra. (4) Money collected on forfeited bond in bastardy is not part of fine and forfeiture fund. Shows Case, 91 Ala. 390, 8 So. 713. (5) Bastardy is not a case for the grand jury, nor is this proceeding prosecuted as an offense against the peace and dignity of the state. (6) If the accused is convicted on the main trial, no fine is imposed on him. He is merely required to pay the costs, and enter into bond conditioned to pay certain money as the court may order (within the limits of the statute) for the support and education of the child. Shows Case, supra. In said case, the Supreme Court said: "This is a wholesome municipal regulation, and looks to the welfare of society as well as that of the illegitimate child." This discussion could be prolonged, but we deem it unnecessary so to do. We think what has been said on this question is sufficient to show, as stated, that the court committed no error in sustaining the state's demurrer to the special plea.

■■ Another earnest insistence of appellant is that his constitutional rights were invaded, and in this connection invokes that portion of section 6 of the Constitution 1901, wherein it is provided: "That in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either * * * to be confronted by the witnesses against him * * * to testify in all cases, in his own behalf." It is not contended that the accused was not in court at the time of the trial and confronted by all of the witnesses who testified in his presence against him.

This insistence is based upon the fact that the defendant was deaf, and, as a result of such infirmity, could not hear and understand what the witnesses who testified against him said. In this connection, the following is shown by the record:

"The Attorney representing the defendant then stated to the court:

"'We, at this juncture, make known to the court that this defendant is totally deaf and cannot be—cannot hear any of the proceedings in this case. It is impossible for him to know and hear a word that is said upon the trial of this case, and I object to his being put upon trial in said cause on account of said infirmity, being unable to defend himself unless the testimony of the witnesses is made known to him in some manner so he may appreciate and understand what is transpiring on the trial of his case. The defendant can read and write. We further make known to the court that this young man has had no training in whatever you call this hand-language, or sign language. He can read and write and that is all. We also further make known to the court that one of the constitutional guaranties is that a man shall have a trial and be confronted with the witnesses and know the testimony that is offered against him. We can't take time here to sit down and write the whole trial out, everything that is going on here. The Court then stated that the attorney for the defendant would advise the defendant as to what was going on. The attorney representing the defendant then stated that if the testimony was written out so that we could get it. The court then stated that you would be here a week trying this case, this is not a criminal case. Attorney for the defendant then stated that they objected to being put on trial unless there is some way that the defendant may know what is going on; if the Court will provide some way. The Court then stated that they give the attorney for the defendant ample time to advise him as to what was going on. The Court then stated that under the conditions here, if the terms were complied with as requested by the defendant's lawyer this case could never be tried. The Attorney for the defendant then stated: I will ask the court then to lay down or provide some method by which the defendant may be informed of the proceedings against him as the evidence is introduced, so that he may be prepared to defend himself.'"

*　*　*　*　*　*　*

"The State then introduced the prosecutrix, Ruth Burgess, who testified on direct examination as follows:

"My name is Ruth Burgess.

"Then the following occurred:

"Attorney for defendant: Now if the court please, before any further examination of the witness we object to the examination of this witness at this time because by virtue of the

physical infirmities, this man can't hear a word she says.

"The Court overruled the objection of defendant, and to this ruling of the Court defendant then and there duly excepted."

After the evidence was closed the following occurred as shown by the record:

"Mr. McCord: Before your Honor charges the Jury, I want to make a motion. This is a brand new question, a question I have never seen before in the Courts and I want to raise it. I move the Court to exclude all the evidence in this case, except the evidence of the defendant himself, upon the ground that he has not had the ability to hear one word of it, not a single question asked a single witness, nor has he been able to hear a single answer made by any witness; and that he has not had the constitutional guaranty that the law gives one on trial in a court of Justice charged with a case of this sort, to be confronted by his witnesses, in the true sense of the law. It is a new question, I never saw it before.

"The Court: Well, in this case, it appears, as stated by Counsel at the beginning of the case, counsel for the defendant, that the defendant was permanently deaf. It was requested of the Court that the Court excuse his father in order that he might be with counsel for the defendant and the defendant during the trial, which was done. The trial was entered upon and the Court requested counsel to state what he desired the Court to do; that it appeared that the same condition would confront the Court at the next and subsequent terms of Court. The Court stated to Counsel that he would do anything that he could—would permit Counsel to advise with the defendant from time to time during the trial, and advise him of the testimony which was then being introduced. During the progress of the trial the Court did excuse the defendant and counsel in order that they might advise with him as to what was going on, and the testimony that was being introduced in the case. The Court has complied with every request counsel has made representing the defendant, except the proposition to continue the case, so far as I am advised.

"Mr. McCord: I want the record to show further that the only means of communication this man has at any time with his counsel or anybody else, so far as understanding anything is concerned, is by writing. He knows no sign language or anything to communicate with anybody.

"The Court: I don't know to what extent he is deaf, I can't say.

"Mr. McCord: Well, the evidence is he is totally deaf, if the court please. If there is any question about that—well, it has been proven here.

"The Court: Can't he hear anything at all?

"Mr. McCord: Not a thing in the world.

"Mr. Rains: He can talk, your honor.

"The Court: Yes, he can talk.

"Mr. McCord: Well, talking don't do him any good.

"The Court: So under the conditions, the Court having fully complied with every request made of the court by attorneys for the defendant, and he being represented by able attorneys who are capable to advise him as to his rights, and who have been given the opportunity to do so, the motion to exclude the testimony is overruled.

"Mr. McCord: And we reserve an exception."

As to the foregoing, it appears to us that that the trial judge did all that was humanly possible to comply with the request and insistent demands of the accused. Certainly able and distinguished counsel for appellant do not contend that a deaf person is immune from trial and conviction for crime. Such would be the effect of the present insistence if sustained; it is therefore manifest the contention is untenable and without merit. Moreover, the section of the Constitution (6) refers and applies to criminal prosecutions only, and from what has been said has no applicability to the case at bar.

■■ On the main trial the evidence was in sharp conflict. That for the prosecution tended to make out a case of bastardy against this appellant as charged in the complaint. If this evidence was sufficient to reasonably satisfy the jury that this appellant was the real father of the child in question, all other questions being uncontroverted, the jury properly returned its verdict to that effect. The accused set up an alibi insisting in effect that at the time the child in question was begotten he was in a distant state. The evidence as to this was in conflict; hence a question for the jury to determine.

The remarks of the court relative to the interest of the prosecutrix, the mother of the child in question, were without error. Pruitt's Case, 16 Ala. 707. In the Pruitt Case, the Supreme Court said: "The female is not a party to the cause—she is merely the informer or witness, and she recovers nothing."

The exceptions reserved to the court's rulings on the admission and rejection of evidence have each been examined and have had the attentive consideration of this court. In this connection we discover no reversible error, but will refrain from a detailed discussion of all of these exceptions, as it would serve no good purpose so to do.

From the entire record, all of which has had our careful consideration, we are of the opinion that this appellant was accorded a fair and impartial trial, and that the judgment from which this appeal was taken should be affirmed. It is so ordered.

Affirmed.