38 So.2d 330

**Ex parte CITY OF MOBILE.**

**I Div. 345.**

Supreme Court of Alabama.

Jan. 20, 1949.

Harry Seale, of Mobile, for petitioner.

Holberg, Tully & Aldridge, of Mobile, for respondent.

540

A. A. Carmichael, Atty. Gen., and Jas. T. Hardin, Asst. Atty. Gen., amici curiae.

SIMPSON, Justice.

Mandamus to review a pre-trial order of the circuit judge in a prosecution by the City of Mobile against one Sidney Prince for violating a provision of the City Ordinance against the possession of lottery paraphernalia.

The City Ordinance reads:

"Possession of Gambling Paraphernalia Prohibited.—It shall be unlawful and an offense against the City of Mobile for any person, firm, association or corporation to have in his or its possession any paraphernalia commonly used in the carrying on of any lottery or device of like kind or any gift enterprise or scheme in the nature of a lottery or gift enterprise, including, but without limiting the generality of the foregoing, lottery tickets, lottery sheets, lottery receipts, 'birdcages' or barrels or other containers used for drawing numbers or lots."

The police officers of the City of Mobile, without a search warrant or warrant of arrest, entered the defendant's home and, over his protest, searched his premises and seized certain lottery parapher-

nalia and interposed the prosecution against him for the possession thereof in violation of said ordinance. Prosecution was instituted in the recorder's court and on conviction Prince appealed to the circuit court, where the case is now pending.

After the appeal to the circuit court, Prince filed a motion to suppress the evidence thus obtained and prayed the court to order the paraphernalia returned to him, on the ground that the search and seizure were, and, to use the evidence thus procured would be, in violation of §§ 5 and 6 of the Constitution of Alabama and the 4th and 5th Amendments to the Constitution of the United States. A pre-trial hearing was had on this motion and the court granted same, ordered the evidence suppressed and the seized property returned to the movant. This proceeding is to review that order.

The court, sitting en banc, after studious consideration of the whole question and the earnest and elucidating arguments of counsel, both orally on submission and in written briefs, entertains the view that the order of the circuit judge was laid in error and that the writ should be granted. The two leading cases in this jurisdiction of Shields v. State, 104 Ala. 35, 16 So. 85, 53 Am.St.Rep. 17, and Banks v. State, 207 Ala. 179, 93 So. 293, 24 A.L.R. 1359, clearly sustain the view.

The Shields case, as regards the effect of the mentioned sections of the Alabama Constitution on the question, deduced the following concepts:

■■ 1. The violation by a police officer of the constitutional interdict against unreasonable searches and seizures, § 6, Alabama Constitution 1875, now § 5, Constitution 1901, is held to be one by an individual, in which the State has no part —a private wrong, subject to private redress, which the law affords. That case pointed out that if a police officer, by force, makes search of persons, "or compels them to submit to it, he becomes a trespasser, and for the wrong is civilly answerable; and he commits an indictable misdemeanor, the offense being aggravated because of his official relation, and the abuse of its rightful powers"; that "The state had no con-nection with, and had no agency in, the wrong committed * * *. The law appoints the remedy for the redress of the wrong, but the exclusion of the evidence criminating the defendant is not within the scope of the remedy, or the measure of redress." 104 Ala. 38, 39, 16 So. 86.

■ 2. Evidence thus gained by the independent, unlawful acts of an officer of the law in violation of such constitutional mandate, is nonetheless admissible and its introduction in evidence in a criminal prosecution is not violative of the prohibition of § 7 (§ 6, Const.1901) of the 1875 Alabama Constitution against compelling the accused to give evidence against himself, the principle being thus analyzed:

"* * * The defendant made no admission or confession; he was passive * * * if he had made an admission or confession, its exclusion, because not free and voluntary, would have been unavoidable. It is not that which he has said or done which is supposed to offend the constitutional guaranty, but the independent, unlawful acts of the sheriff, by and through which it was discovered that he bore upon his person the 'mute witness' of a criminal offense. * * *" 104 Ala. 40, 16 So. 87.

■ 3. "However unfair or illegal may be the methods by which evidence may be obtained in a criminal case, if relevant, it is admissible, if the accused is not compelled to do any act which criminates himself, or a confession or admission is not extorted from him, or drawn from him by appliances to his hopes or fears." 104 Ala. 42, 16 So. 88.

The foregoing rationalizations deduced the principle which is now and has been for many years firmly settled in Alabama that:

"Evidence obtained by a search, which was illegal and unauthorized, is admissible to fix the guilt of a criminal offense upon the person searched; and the admission of such evidence so obtained is not violative of the constitutional guaranty that a person accused shall not be compelled to give evidence against himself, or of the further guaranty 'that the people shall be secure in their persons, homes, papers,

and possessions from unreasonable seizures or searches.' " 1st headnote, Shields case.

There are many decisions of this court reaffirming the principle, such as Chastang v. State, 83 Ala. 29, 3 So. 304; Scott v. State, 113 Ala. 64, 69, 21 So. 425; Pope v. State, 168 Ala. 33, 40, 53 So. 292; Robertson v. City of Montgomery, 201 Ala. 198, 77 So. 724; Banks v. State, supra; Tranum v. Stringer, 216 Ala. 522, 133 So. 541; Owens v. State, 215 Ala. 42, 109 So. 109; Jackson v. State, ante, p. 226, 36 So. 2d 306, 308(8).

The question again had the full consideration of the court and the entire field of authorities was recanvassed in the case of Banks v. State, supra, where it was firmly decided that the use of evidence so obtained was legal and admissible and uninfluenced in that regard by the mentioned prohibitions of our own State Constitution and, also, that use of such evidence in a criminal trial violated no right secured a citizen under the 4th, 5th, and 14th Amendments to the Federal Constitution. That case was one of the several in the course of this rule's judicial history where acerbate invection had been leveled against it and this court's interpretation of the stated sections of the Alabama Constitution with respect to the question. In adhering to the rule the court, speaking through the late Mr. Justice Thomas, said:

"This ancient rule of law, so well stated by Judge Brickell (Shields v. State, supra), has obtained among English-speaking people for 200 years, since the trial of Bishop Atterbury in 1723 (16 How.St.Tr. 323). With this construction by our court of sections 6 and 7 of article 1 of the Constitution of 1875, the same was reordained in the Constitution of 1901 as sections 5 and 6, with the additional provision in section 6 that the accused has the right 'to testify in all cases, in his own behalf, if he elects so to do.' Ex parte Pepper, 185 Ala. 284, 294, 64 So. 112; Taylor v. Woods, 52 Ala. 474; authorities collected in Johnson v. Craft, 205 Ala. 386, 87 So. 375, 395. The reordaining, or substantial reproduction, of a provision of the organic (or statutory) law operates its adoption with the settled construction which the judiciary has placed upon it. Ex parte Pepper, supra; Tennessee Coal Iron & R. Co. v. Roussell, 155 Ala. 435, 46 So. 866, 130 Am. St.Rep. 56; Wood, etc., Co. v. Cocciola, 153 Ala. 555, 45 So. 192; Taylor v. State, 131 Ala. 36, 31 So. 371; Morrison v. Stevenson, 69 Ala. 448.

" * * * The question of the competency of such evidence, raised on the trial of defendant by her objection 'to the appearance of each of said witnesses and to any testimony that might be elicited from them, or either of them, upon the grounds that said testimony was procured by said witnesses through an illegal and unwarranted search of her dwelling house and appurtenant premises,' was properly adjudged in favor of the state. * * *" 207 Ala. 182, 93 So. page 299.

"We are satisfied with the construction of sections 6 and 7 of the Constitution of 1875 (sections 5, 6, Const.1901), made to the facts on which rested the decision in Shields v. State, supra, and other cases following the rule there announced. * *" 207 Ala. page 184, 93 So. page 301.

Then, in the comparatively recent case of Jackson v. State, supra, opinion by Mr. Justice Foster, the perdurance of the rule was not questioned, where it was said: "Evidence acquired by unlawful search may be used, and is not illegal evidence because of that circumstance." 36 So.2d 308, citing Shields and some other former cases.

We remain convinced that this settled construction should not be departed from. In our opinion, as many times expressed in previous decisions, it comports both with logic and finite rules of construction.

█ The effect of the federal Constitution on the question involved is not much pressed on us for decision and, indeed, the Banks case fully demonstrates that the use of such evidence on trial in no way violates the rights of citizens guaranteed to them under the 4th, 5th, and 14th Amendments to the Constitution of the United States. The recent case of Harris v. United States, 331 U.S. 145, 159, 67 S. Ct. 1098, 1105, 91 L.Ed. 1399, concedes the rule of admissibility in many states and takes notice that "the federal rule * *, as against the rule prevailing in many

*States,* renders evidence obtained through an improper search inadmissible no matter how relevant." (Emphasis ours) Thus, a contention that such evidence is illegal, as in violation of these constitutional guaranties, is unsound and without merit.

It is also to be observed that some few of the states of the country have adopted the federal rule that evidence so obtained is inadmissible, because violative of constitutional provisions, such as the 5th and 6th sections of the Alabama Constitution. But the weight of authority is otherwise and supports the Alabama rule, as can be ascertained by reference to State v. Willis, 91 W.Va. 659, 114 S.E. 261, 24 A.L.R. 1408; State v. Owens, 302 Mo. 348, 259 S.W. 100, 32 A.L.R. 408; Orick v. State, 140 Miss. 184, 105 So. 465, 41 A.L.R. 1145; State v. Arregui, 44 Idaho 43, 254 P. 788, 52 A.L.R. 477; State v. Dillon, 34 N.M. 366, 281 P. 474, 88 A.L.R. 348; McIntyre v. State, 190 Ga. 872, 11 S.E.2d 5, 134 A.L.R. 819; 150 A.L.R. 566.

To further make evident the soundness of the position this court has taken in regard to the announced rule, we call attention that one eminent authority on evidence has also held strongly to the view entertained. In 8 Wigmore on Evidence, 3d Ed., § 2183, pp. 4, 5, is the following text on the subject and a criticism of the rule of inadmissibility:

"Necessity does not require, and the spirit of our law does forbid, the attempt to do justice incidentally and to enforce penalties by indirect methods [by excluding such evidence]. * * * Such a practice might be consistent with the primitive system of justice under an Arabian sheikh; but it does not comport with our own system of law. It offends, in the first place, by trying a violation of law without due complaint and process which are indispensable for its correct investigation. It offends, in the next place, by interrupting, delaying, and confusing the investigation in hand, for the sake of a matter which is not a part of it. It offends, further, in that it does this unnecessarily and gratuitously; for since the persons injured by the supposed offence have not chosen to seek redress or punishment directly and immediately, at the right time and by the proper process, there is clearly no call to attend to their complaints in this indirect and tardy manner. The judicial rules of Evidence were never meant to be an indirect process of punishment. It is not only anomalous to distort them to that end, but it is improper (in the absence of express statute) to enlarge the fixed penalty of the law, that of fine or imprisonment, by adding to it the forfeiture of some civil right through loss of the means of proving it. The illegality is by no means condoned; it is merely ignored.

"For these reasons, it has long been established that the *admissibility of evidence is not affected by the illegality of the means through which the party has been enabled to obtain the evidence:*"

The question now comes under review in slightly different form from that heretofore considered, where in previous cases the point was raised by due objection to the introduction of such evidence on trial. But we regard it only of form and not of substance.

The customary practice in jurisdictions holding to the minority view, that such evidence is illegal and inadmissible, is usually a pre-trial proceeding such as was had in the instant case by motion of the accused to suppress the evidence and an order of the return of the seized property to avert its introduction on trial. The argument of counsel for the accused, ably conceived and presented with force and zeal, is that previous holdings of this court would not preclude such a pre-trial proceeding to suppress the evidence and that to fail to do so would be in violation of the considered sections of the Alabama Constitution. In this we cannot agree. The underlying principles on which our former holdings have been rested clearly indicate the contrary.

Evidence so obtained, as under the circumstances here disclosed, is not inadmissible but admissible, is not illegal but legal, and it would be sophistical to so pronounce the quality of such evidence and at the same time order it suppressed and the seized property returned to the accused. Such a status would engraft upon Alabama's rule of admissibility an illogical

exception, which would be unwarranted. Expressions in the Banks case, which counsel for the accused have considered as authority for their position, have been misconstrued.

Idem per idem, it was error to order the lottery paraphernalia returned to the accused when it would be legal evidence and subject to introduction in the prosecution of the accused. It properly should remain in custodia legis until trial and disposition of the cause.

Writ granted.

BROWN, FOSTER, LIVINGSTON, LAWSON, and STAKELY, JJ., concur.