42 So.2d 30

## INGRAM v. STATE.

### 7 Div. 961.

Court of Appeals of Alabama.
Feb. 8, 1949.

Rehearing Denied March 8, 1949.

Reversed on Mandate Aug. 15, 1949.

598

Miller & Pittman and E. G. Pilcher, all of Gadsden, for appellant.

A. A. Carmichael, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant's jury trial on an indictment charging murder in the first degree resulted in his conviction of murder in the second degree and a sentence to imprisonment in the penitentiary for a term of fifteen years.

The victim of this shooting was appellant's wife, and the locale of the shooting was the house they occupied in Gadsden. Robert Montgomery, Laura Montgomery and Callie McKinney also lived in this same house.

Laura Montgomery and Callie McKinney were witnesses for the State, and the tendency of their testimony was to the effect that appellant and deceased had been quarrelling, and eventually appellant attempted to carry the deceased toward an outer door. The deceased struggled loose and they returned to their room. The argument between them was resumed and another scuffle insued. This scuffle carried them into the kitchen and appellant went out of a door. During this second scuffle the appellant had a shotgun.

After appellant went or was pushed through the kitchen door the deceased bolted the door.

The appellant then went around to the front of the house, and after his demands that the front door be unlocked were unheeded, he broke a pane in the door and unlocked it. The deceased during this time had gone into a closet in the house.

When appellant reentered the house he demanded the whereabouts of deceased and began searching for her. Eventually he opened the closet door and the deceased then came out, or was dragged out, of the closet. They again resumed their struggles, the appellant still being in possession of the shotgun.

About this time Laura Montgomery and Callie McKinney, who had been present in the house, fled to a neighboring house, where in about three to five minutes after they had left their home, they heard the report of a gun.

Upon arrival of police officers some minutes later the deceased was found in the kitchen of her home severely wounded in her abdominal area from gunshot. She died shortly thereafter.

The appellant testifying in his own behalf sought to justify his conduct on the ground of self-defense. He asserted that the first struggles with his wife resulted from his efforts to get his wife out of the house and into fresh air to sober her up. He denied he had a shotgun during any of these struggles, but asserted that when he returned into the house after having been ejected in the first struggle that his wife first got the gun. In his attempts to keep her from shooting him they wrestled into the kitchen and in that room his wife picked up an ice pick, and while still holding to the gun attempted to stab him. During this phase of the encounter the gun went off. Appellant claimed not to know whether his wife was wounded by this explosion. He did at this time gain possession of the gun, and left the house.

Appellant fled to Opelika, where he was arrested some five or six days later.

The appellant was arrested and jailed in Opelika around 7 P.M. We gather from the record that on that same night police officers of Gadsden arrived in Opelika around 11:45 P.M., and appellant being given into their custody they started back to Gadsden within about fifteen minutes. On their arrival in Gadsden around 3:30 A.M. they placed appellant in a jail cell by himself. In the late afternoon appellant was taken to a room in the jail and interviewed by two police officers of the City of Gadsden, one of whom was Detective Cartee. During this interview appellant signed a statement confessory in nature, but in which appellant in nowise claimed that the deceased was attacking him with an ice pick at the time the gun was fired.

Mr. Cartee testified that no threats, inducements, rewards or hope of reward were made or held out to appellant to induce him to make a statement, but on the other hand the appellant's actions were entirely voluntary.

He further testified that appellant did not bear signs of mistreatment when he first saw him in the jail at Opelika, and he was not in any way mistreated on the drive from Opelika to Gadsden. Appellant did not bear any signs of mistreatment when he saw him at the interview when the statement was signed, nor did appellant make any claim that he had been mistreated in any way by anyone during the time he was in the Opelika jail or in the Gadsden jail.

After the above testimony by Mr. Cartee the confession was offered in evidence by the Solicitor.

Appellant objected to its admission on the following grounds, among others:

"We object to any confession being offered until they comply with the recent rul-

ing of the United States Supreme Court and the Supreme Court of this State. They have got to account for this man every step of the way from the time of his first, from the time he is first arrested until the confession is in.

"Mr. Randall. I am sure your Honor is more familiar with that ruling than Mr. Pilcher."

These objections were overruled by the court and the confession was received in evidence.

The appellant's objections we presume are based on the so-called "McNabb Rule" enunciated by the Supreme Court of the United States in the case of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 615, 87· L.Ed. 819. In the McNabb case the illiterate defendants for several days, and before being carried before a committing magistrate, were "subjected to unremitting questioning by numerous officers," they were kept in a barren room with no place to sit or lie down except the floor, and one defendant was unclothed in the presence of the officers. The court held that the confessions secured after this procedure were improperly admitted "where they were the plain result of holding and interrogating persons without carrying them 'forthwith' before a committing magistrate as the law commands." Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 171, 93 L.Ed. ——.

The McNabb case has been variously interpreted, and its effectiveness as a mode of enforcing the prompt production statutes was considerably weakened by these varied interpretations. Some courts have adopted a broad view of the meaning of "forthwith;" others have emphasized the presence of factors present in the McNabb case, such as the constant grilling by relays of officers, in addition to the delayed commitment of the defendants, and have considered these additional factors as being the real basis of the McNabb Rule. A full discussion of the history of the McNabb Rule may be found in "The McNabb Rule Transformed," 47 Co.L.R. 1214.

All doubt as to the true doctrine of the McNabb case seems to have been dispelled in the recent case of Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. ——, which holds that a confession is inadmissible if made during illegal detention due to failure to promptly carry a prisoner before a committing magistrate.

Actually in the present case there is no showing in the record as to when a commitment was obtained against this appellant. We pretermit consideration of the effect of this omitted showing however, for we do not consider that the McNabb Rule is binding on us. In Townsend v. Burke, 334 U.S. 736, 738, 68 S.Ct. 1252, 1254, 92 L.Ed. 1690, the United States Supreme Court said in reference to the McNabb Rule: "But the rule there applied was one against use of confessions obtained during illegal detention and it was limited to federal courts, to which it was applied by virtue of our supervisory power." See also dissenting opinion of Justice Reed in the Upshaw case, supra, 335 U.S. 410, 69 S.Ct., at page 172, 93 L.Ed. ——. It must also be noted that Justice Black, who wrote the majority opinion in the Upshaw case, supra, made it clear that the holding was not placed on constitutional grounds.

Thus, those decisions of the United States Supreme Court holding that convictions resulting from confessions which are the result of mistreatment of the prisoner, either physical or psychological, because such convictions constitute a denial of the due Process clause of the federal constitution Amend. 14, are in nowise applicable to the question now before us. See Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682; Malinski v. New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029; Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224; Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716.

"In criminal trials, the method of obtaining evidence has never been a reason for barring its use except where constitutional rights were violated." Mr. Justice Reed in dissenting opinion in the Upshaw case, supra. [69 S.Ct. 178]

The fundamental question involved in the admission of the confession in this case must be determined solely on

whether it was voluntary in character. It is true that Section 160, Title 15, Code of Alabama 1940, provides that an officer upon arresting a prisoner "must forthwith take him before a magistrate." We cannot see that the failure of an officer to comply with the statutory technicalities of properly processing an arrest can render involuntary a confession which is otherwise shown to be voluntary. If voluntary, the confession was competent, relevant and admissible evidence, and in our opinion its admissibility is not affected by the conduct of the arresting officers, so long as this conduct is free of any actions that would tend to coerce a confession.

█ Our courts, along with a vast majority of the courts of our sister states, and contrary to the view of the federal courts, have long held that "However unfair or illegal may be the methods by which evidence may be obtained in a criminal case, if relevant, it is admissible, if the accused is not compelled to do any act which criminates himself, or a confession or admission is not extorted from him, or drawn from him by appliances to his hopes or fears." Shields v. State, 104 Ala. 35, 16 So. 85, 88, 53 Am.St.Rep. 17; Banks v. State, 207 Ala. 179, 93 So. 293, 24 A.L.R. 1359; Ex parte City of Mobile, 251 Ala. 539, 38 So.2d 330.

While testifying in his own behalf the appellant claimed that some person in Opelika threatened to strike him, but never did, and that his request that an Opelika attorney be sent for was refused. He also claimed that some one in the Gadsden jail had threatened him, but he could not remember that he was threatened during the time he was in Mr. Cartee's presence.

In our opinion Mr. Cartee's testimony clearly established prima facie the voluntary character of this appellant's confession. The fact that appellant gave testimony, which if believed, tended to show coercion does not authorize us to conclude that the trial court erred in determining that this confession was voluntary. Clayton v. State, 32 Ala.App. 124, 23 So.2d 396.

During the examination of Mr. Cartee looking toward establishing the predicate of the voluntariness of appellant's confession the record shows that the court addressed certain questions to the witness as follows:

"The Court: Any scars or bruises about him?

"The Witness: No, sir.

"The Court: Did he appear in pain or comfortable and at ease.

"The Witness: Normal.

"The Court: He didn't seem nervous or anything of that kind?

"The Witness: No, sir.

"The Court: Overrule the objection.

"Mr. Pilcher: We reserve and exception."

Later, during the direct examination of the appellant, while he was testifying in his own behalf and particularly as to the circumstances under which he signed the confession, the record shows the following:

"Q. Did you see more than two officers, or just two? A. No sir just then, late in the evening, I didn't see but two.

"Q. Did they have guns on their hips? A. Yes, sir.

"Q. Did you have any of your family there or any of your friends there? A. No, sir.

"Q. Were you the only colored person in that office there, in that room there? A. Yes, sir.

"Q. Were you frightened or afraid?

"Mr. McCord. And to that we object, if the Court please.

"The Court. I sustain the objection.

"Mr. Pilcher. We reserve an exception."

Appellant's counsel argues that the court's ruling in this instance necessitates a reversal of this cause, if prior decisions of the Supreme Court are to be adhered to, we of course are bound by these decisions.

█ The question and the court's ruling thereon involves what is commonly known to the bench and bar of this State as the Rule of Exclusion. This rule found in no other jurisdiction, is to the effect that a witness, whether a party to a cause or not, may not testify to his own intent or

other state of mind, notwithstanding the materiality to the case of this intent or state of mind.

Utter confusion exists in our decisions dealing with the application of this rule. In the interest of brevity we will not attempt to set forth these irreconcilable decisions, but refer those interested in the history and application of this rule to an article by Honorable Russell McElroy to be found in 1 Ala. Lawyer 221, and to the extensive dissenting opinion of Livingston, J., in the recent case of McGuff v. State, 248 Ala. 259, 27 So.2d 241.

Regardless of the chaotic application of the rule in the main, it seems fairly well settled that two exceptions have been made to this rule, first, that a witness who has testified to doing certain acts may on cross-examination be questioned concerning his intent, motive, purpose, etc., in doing these acts; and second, where a witness admits having made statements contradictory of his testimony, he may testify as to his motive or reason for having made the prior statement.

In the present case the confession bore appellant's signature, and must be considered as a former statement of appellant contradictory in some material respects to his account given on the witness stand. Mr. Cartee's testimony as to appellant's appearance and that he was not nervous strengthens the materiality of the testimony sought by the question to which the objection was sustained.

In Kinsey v. State, 204 Ala. 180, 85 So. 519, 520, the appellant was convicted of murder. One Staggs was also implicated in the same murder and had been convicted therefor. The appellant had made confessory statements to the sheriff, and these statements were shown in the trial. In his examination in chief the appellant had testified to facts toward his exoneration. Immediately succeeding this testimony he was asked by counsel: "Were you afraid of Staggs?" The court sustained the prosecution's objection to this question. The cause was reversed because of this ruling, McClellan, J., writing as follows:

"Some of the statements attributed to appellant by the witness Romine and admitted by the appellant to have been made by him to that witness, if not others, consisted with what the appellant testified Staggs told him to say (quoted above) in explanation of the cause and circumstances of Gentry's death. It was decided in Johnson v. State, 102 Ala. [1], 21, 16, So. 99 (in response to rehearing) that an exception to the general rule that a witness may not testify to his uncommunicated motives and intention exists where the witness admits that he made a statement attributed by others to him. This exception comprehends the right of even a witness to explain 'the nature, circumstances, meaning and design' of what he said, and 'he may be asked the motive by which he was induced to use such expressions.' This doctrine of Johnson v. State was accepted and applied in Lowman v. State, 167 Ala. 57, 52 So. 638; Williams v. State, 123 Ala. 39, 26 So. 521; Postal [Tel. Cable] Co. v. Hulsey, 115 Ala. 193, 207, 22 So. 854; Henry v. State, 107 Ala. 22, 26, 19 So. 23; Anderson v. State, 104 Ala. 83, 86, 87, 16 So. 108. In the last cited case it was held—notwithstanding the form of the question—that a witness might testify in explanation of discrepancies between her present testimony and that given on a former hearing of a bastardy proceeding that she, the witness, was 'scared and embarrassed before the justice of the peace'; the ruling being referred for authority to Johnson v. State, supra. It appears from the consideration accorded by this court to the doctrine of the Johnson case and its application to concrete cases that the exception's effect is not restricted to instances where cross-examination of the witness has elicited the subject for the application of the rule of the Johnson case. Its design is to give the jury, as well as the witness, the benefit of whatever circumstance or explanation, including the reason and motive of the witness, there may be that will shed light on the verity of the subject of the witness' explanation of the statement attributed to him and admitted by him to have been made."

The writer has found nothing in later decisions eviscerating the doctrine enunciated in the Kinsey case, supra. Its application to the present case is obvious, and

he has concluded therefore that the court's action in this premise was erroneous.

The writer is of the opinion that the omission of any claim by the appellant in his confession that deceased was attacking him with an ice pick, at the time the gun fired, and his contention in his testimony that such was a fact, is a variance materially affecting his plea of self-defense. The jury should therefore have had before it all of the facts and circumstances tending to affect the credibility of the confession, and that the court's ruling in this instance constituted an injury to appellant of such substantiality as to preclude the application of the doctrine of error without injury.

Bricken, Presiding Judge, and Carr, Judge, however are of the opinion that the alleged confession and appellant's testimony are not in substantial conflict to a degree that does preclude the application of the principle of error without injury, and that such principle should be applied in this instance. This view being held by a majority of the court will of course be controlling.

■ The record shows that during the argument to the jury by the Special Prosecutor some person out in the audience was heard to say "Thats right. Thats the truth."

The court promptly and in detail instructed the jury as to the impropriety of such conduct by the unknown person, and that the jury was not to be in any degree influenced thereby.

The court then overruled appellant's motion for a mistrial because of this incident. In our opinion the court's explicit instructions to the jury effectively eradicated any substantial injury that may have been caused appellant, and we are unwilling to predicate error on the court's denial of the appellant's motion for a mistrial because of the above-mentioned occurrence.

The majority of the court being of the opinion that this record is free of error substantially affecting the material rights of this appellant, this cause is due to be affirmed, and it is so ordered.

The writer, for reasons hereinabove set forth, being of the opinion that the cause should be reversed, respectfully dissents.

Affirmed.

HARWOOD, J., dissents.

PER CURIAM.

Reversed and remanded on authority of Ingram v. State, 252 Ala. 497, 42 So.2d 36.