282 So.2d 898

Jimmy Lee **LOGAN**

v.

**STATE of Alabama.**

SC 358.

Supreme Court of Alabama.

Sept. 13, 1973.

John S. Glenn, Opelika, for appellant.

Edward B. McDermott, Special Asst. Atty. Gen., Mobile, for the State.

MERRILL, Justice.

Jimmy Lee Logan, a sixteen-year-old boy, was convicted in Lee County Circuit Court of raping a twenty-seven-year-old unmarried girl in Auburn, Alabama. Logan appealed from his conviction and twenty-four year penitentiary sentence to the Alabama Court of Criminal Appeals. On April 24, 1973, the cause was transferred to this Court, pursuant to Title 13, § 111(11a), Code of Alabama 1940, Recompiled 1958.

It appeared on the trial that the victim had been window-shopping in Auburn the night of the crime. As she was walking home, several males dragged her into the bushes alongside Drake Avenue, a block from her home. She was forcibly raped three times and there was a fourth unsuccessful attempt. It was her impression there were four different assailants.

Willie Scott, fourteen years old, testified that he, the defendant Logan, and two others had been the assailants. Willie testified that as the defendant and the others were raping the woman, he thought she seemed hurt, so he put his hand on her heart to make sure she was alive. When the three were finished, they forced Willie to get on top of the woman, but he did not penetrate.

A cellmate testified that while he and the defendant were locked up together, Logan had told him the full story of the assault, including an admission that he and each of the others had raped the victim, except for little Willie, who "[didn't] get too much."

The defendant himself took the stand and denied everything. He claimed to have been at home watching television during the time of the assault.

The jury returned a verdict of guilty as charged, and imposed a twenty-four year penitentiary sentence.

The warrant on which appellant was arrested recited:

"Before me, Hal Smith, Clerk of the Court of Common Pleas of Lee County, Alabama, personally appeared Frank deGraffenried who being first sworn, deposes and says on oath, that he has probable cause for believing and does believe that

"Jimmy Lee Logan, alias, forcibly ravished [victim's name, omitted by this court in the interest of her privacy] a woman."

■ Appellant argues that the warrant was issued on the "mere conclusion of a Police officer," and, therefore, the arrest warrant was invalid; and, if invalid, the detention of appellant was invalid. Based on these premises, appellant then argues that the alleged verbal statements of the appellant to cellmate Parker that he took part in the rape and that he was the second of the group to have sexual intercourse with the prosecutrix were inadmissible because they were made while appellant was illegally detained and were "fruit of the poisonous tree" doctrine. We cannot agree.

In Loyd v. State, 279 Ala. 447, 186 So.2d 731, this court said:

"We are not advised of any case holding that a confession is inadmissible for the reason that it was made while a defendant was being held after being unlawfully arrested. As we note hereafter, the Supreme Court of the United States has held that evidence obtained as the result of an illegal search is not admissible, but we are not advised that the rule of exclusion has been applied to a confession, which is shown to have been voluntarily made, although the confessing person may have been illegally arrested. We are of opinion that the confession was not inadmissible on the ground that it was made after defendant had been taken into custody by an unlawful arrest."

Other recent cases holding the same are Bridges v. State, 284 Ala. 412, 225 So.2d 821[6]; Braggs v. State, 283 Ala. 570, 219 So.2d 396[3]; Hutto v. State, 278 Ala. 416, 178 So.2d 810[6]; Goldin v. State, 271 Ala. 678, 127 So.2d 375[8]; Ingram v. State, 252 Ala. 497, 42 So.2d 36[11]; Vander Wielen v. State, 47 Ala.App. 108, 251 So.2d 240[5]; Reed v. State, 48 Ala.App. 120, 262 So.2d 321[2]. In Ingram v. State, supra, this court approved and agreed with a statement of Harwood, 'J., writing for the Court of Appeals in the same case, (Ingram v. State, 34 Ala.App. 597, 42 So. 2d 30) in which it was stated, "* * * we do not consider that the McNabb Rule (McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819) is binding on us. In Townsend v. Burke, 334 U.S. 736, 738, 68 S.Ct. 1252, 1254, 92 L.Ed. 1690, the United States Supreme Court said in reference to the McNabb Rule: 'But the rule there applied was one against use of confessions obtained during illegal detention and it was limited to federal courts, to which it was applied by virtue of our supervisory power.'"

It follows that the rule in federal courts is not applicable in our courts. We also note that appellant was *tried* on a valid indictment which is not questioned.

In addition, there is a major distinction in this case and the cases cited in brief of

appellant and in the dissenting opinion. In those cases, the court deals mostly with the question of illegal searches or seizures and some do not deal with confessions at all. But in those cases dealing with confessions or admissions, they were made to officers in custodial interrogations, either at the time or shortly after an illegal arrest.

But here, the confession was made to a cellmate and was admitted after a proper predicate had been laid to as its voluntariness. There is no evidence or inference therefrom that any officer was present or heard the confession or that cellmate Parker was a "plant" or undercover agent of any officer. So there was no "poisonous tree" and no "fruit" of any illegal search or seizure or custodial interrogation.

In Sanders v. State, 202 Ala. 37, 79 So. 375, this court held that a prisoner in jail could testify as to a conversation he heard between two fellow prisoners, accused of a crime, upon the issue of the guilt vel non of one of them after a showing that the statements were not otherwise than voluntary.

We find no error in the admission of the testimony of the cellmate Parker.

Appellant also raises questions of (a) error in the court's refusal to transfer the case to the juvenile court; (b) that the testimony of the alleged accomplice, Willie Scott, was not corroborated; (c) that the court erred in allowing hearsay evidence to be adduced from Deputy Sheriff Watkins.

■ The answer to (a), the transfer question, is that when a youth 16 to 18 years of age is charged with a crime in a court of criminal jurisdiction, the statute, Tit. 13, § 363, vests in the court a discretion to put him to trial or transfer him to the jurisdiction of a juvenile court. Whitfield v. State, 236 Ala. 312, 182 So. 42; Davis v. State, 259 Ala. 212, 66 So.2d 714. The appellant was 16 years old and the trial court had the right, in his discretion, to put him on trial in the circuit court. We cannot say that from a consideration

of the record, the trial court abused his discretion.

We now consider the argument that the court erred in admitting Willie Scott's testimony because Scott was an accomplice. Appellant concedes that the testimony of Parker corroborated that of Scott, but insists that Parker's testimony was not admissible. We have already decided that question adversely to appellant.

The State argues that Scott was not an accomplice because he could not have been convicted of rape since, even under the testimony of the prosecutrix, he achieved no penetration.

■ The test of whether a witness is an accomplice is, could the witness have been indicted and convicted of the offense charged either as principal or accessory. Miller v. State, 290 Ala. 248, 275 So.2d 675; Doss v. State, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712; Strange v. State, 43 Ala.App. 599, 197 So.2d 437.

■ Assuming, without conceding, that Scott was an accomplice, still there was ample corroborating evidence to support the conviction without Scott's testimony.

■ Finally, the point that hearsay evidence of Deputy Watkins was not admissible. Appellant states in brief: "The record clearly shows that trial counsel properly objected to the hearsay testimony of Ronnie Watkins, concerning a conversation between Watkins and the witness for the State, Charlie Parker."

On direct examination, the appellant testified that his cellmate, Parker, after returning from a session with some officers, including Deputy Ronnie Watkins, told him (appellant) as follows:

"* * * He was one that came and got Charlie Parker and carried him downstairs. He said he was Deputy Ronny Watkins and that the two Opelika detectives—and that Auburn detectives wanted to pay Charlie Parker, pay him

some money to testify against me. He said Ronny Watkins had—he didn't want the money, he'd rather have his case dropped."

The appellant was the concluding defense witness and the defendant rested, but another cellmate corroborated the statement.

The only rebuttal witness was Deputy Ronnie Watkins. After Watkins had testified that he had talked with Parker in the presence of other officers about appellant's case (no details were stated), the following transpired:

"Q. What, if anything, was said between the two of you all?

"A. After we had finished our conversation in reference to him testifying and the preliminary the next morning, he started to leave and he turned and he came back and asked me had I found out anything about his case. And I didn't know what he was talking about and I inquired into it and asked him what the charges were and he informed me that he was charged with assault with intent to murder and he had talked to Deputy Popwell, Jerry Popwell, about waiving action to the Lee County Grand Jury, and pleading guilty to those charges and I asked him exactly what had taken place that he was in jail for those charges for. And he informed me that he had got in an altercation—

"MR. GLENN: We have to renew the objection on the grounds of hearsay.

"MR. WRIGHT: It's just rebuttal, that's already been brought out.

"THE COURT: That's right. The district attorney has the right to rebuttal. You have put on testimony, Mr. Glenn, before the jury to the effect that Ronny Watkins and Mr. deGraffenried, witnesses for the State, had offered the man money just to get him to testify.

"MR. GLENN: The defense was just being cautious, Your Honor, to be sure that it is in the record.

"THE COURT: Yes, sir, well, the Court is going to permit him, Mr. Wright, to put on rebuttal testimony in connection with your direct testimony to the effect that these two gentlemen, Det. deGraffenried and Ronny Watkins, had offered some money to a man for him to change his story or to testify falsely—

"MR. GLENN: Your Honor, I'm not—

"THE COURT: Respectfully overruled, and you have an exception.

"MR. GLENN: Yes, sir, Your Honor. Defendant takes an exception to the Court's ruling.

"THE COURT: Yes, sir, you have an exception. Now, go ahead.

"A. When I inquired as to what he was charged with, I also inquired into the result of those charges and he informed me that he had been in an altercation with Johnny Fowler and that he struck him in the jaw and broke his jaw and as a result an Assault with Intent to Murder warrant was signed against him. And on my own recommendation, I asked Charlie Parker not to waive action by the Lee County Grand Jury, but to wait for the action of the Grand Jury for indictment, to see if they indicted him on that charge; that in my opinion, they probably wouldn't, that they would probably return an assault and battery indictment, if any. And this was the extent of our conversation on his charges."

The trial court was correct in allowing the rebuttal witness to testify that he offered no money or inducements to Parker since the charge had been made by the defendant while testifying in his own behalf.

■ Such evidence is competent and it is elementary that the State may examine a prosecuting witness as to facts tending to rebut the defendant's testimony, or reasonable tendencies thereof. Deloney v. State, 225 Ala. 65, 142 So. 432; Emerson v. State, 281 Ala. 29, 198 So.2d 613.

■ Even so, if there had been error, it was rendered harmless. When the direct examination of the rebuttal witness was concluded, appellant's counsel made the following statement:

"We have no questions of Deputy Watkins. I would like to say at this time we don't think that Deputy Watkins offered him any money. That's just what Charlie Parker said. We don't think he did that."

Obviously, the objection that the evidence was hearsay could not apply to Deputy Watkin's testimony denying the offer of money. It could only apply to matter of the difference in the charge against cellmate Parker in that he was arrested on a charge of assault with intent to murder and later the indictment against him was assault and battery.

The matter was brought up when Parker, on cross-examination by defendant, was asked if after he had talked with Deputy Watkins (and it was undisputed that they had only one conversation) and had testified at the preliminary hearing of appellant, that he (Parker) was indicted for assault and battery. Over the State's objection, the witness testified that the indictment charged assault and battery. The appellant also introduced the warrant charging assault with intent to murder, and the indictment charging assault and battery.

In rebuttal, Deputy Watkins denied offering to or even talking about reducing the charge against Parker in their conversation and stated that the only reference to the charges was that already recorded.

■ Two principles demonstrate that no reversible error was committed in admitting this evidence, some of which was hearsay. First, the admission or rejection of evidence on rebuttal is addressed largely to the trial court's discretion. Goldin v. State, 271 Ala. 678, 127 So.2d 375; Caldwell v. State, 203 Ala. 412, 84 So. 272. The matter was material and important

and the trial court did not err in permitting the witness to attempt to clear himself of the charge.

■ The second principle is that when part of a conversation or transaction is put in evidence, the opposite party may rightfully call for the whole of it, although the evidence was in the first place illegal. Gibson v. State, 91 Ala. 64, 9 So. 171. Further, it has been held that when the defendant, on cross-examination of a witness elicits part of a conversation, the State may in rebuttal show the entire conversation. Davis v. State, 131 Ala. 10, 31 So. 569; Flournoy v. State, 34 Ala.App. 23, 37 So.2d 218.

No error to reverse appearing, the judgment is due to be affirmed.

Affirmed.

COLEMAN, HARWOOD, MADDOX, McCALL, FAULKNER and JONES, JJ., concur.

HEFLIN, C. J., concurs in the result.

BLOODWORTH, J., dissents.

HEFLIN, Chief Justice (concurring in the result):

I concur in the affirmance of the case because the confession was made to a cellmate rather than to a law enforcement officer. I would agree with Justice Bloodworth's dissent except for the fact that none of the United States Supreme Court cases that he cites involve non-law enforcement personnel. I would not extend the doctrine of the "fruit of the poisonous tree" to a confession given to a cellmate.

BLOODWORTH, Justice (dissenting):

I must respectfully dissent, as I think there was error in the admission of the confession made while defendant was being

held in jail under an illegal and unconstitutional arrest, in the absence of a showing that the confession was not a product of the illegal detention. I agree with the rest of the majority opinion.

Perhaps as much or more than any member of this court, I dislike having to place myself in the posture of voting to remand this cause for further proceedings. But, I think the United States Supreme Court decisions compel this result. And, of course, we have a duty to follow those cases, whether we agree with them or not.

In Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), the United States Supreme Court held:

> "*The decisions of this Court* concerning Fourth Amendment probable-cause requirements *before a warrant for either arrest or search can issue* require that the judicial officer issuing such a warrant be supplied with sufficient information to support *an independent judgment that probable cause exists for the warrant.* * * *"* (Emphasis added)

The affidavit upon which the warrant in *Whiteley* was based averred in relevant part:

> "I, C. W. Ogburn, do solemnly swear that on or about the 23 day of November, A.D. 1964, in the County of Carbon and State of Wyoming, the said Harold Whiteley and Jack Daley, defendants did then and there unlawfully break and enter a locked and sealed building * * *."

This affidavit was rejected by the United States Supreme Court as being "nothing more than the complainant's conclusion that the individuals named therein perpetrated the offense." Id. at 565, 91 S.Ct. at 1035. Having found the affidavit insufficient to support the warrant, the Court in *Whiteley* declared the arrest invalid and reversed the conviction because evidence seized at the time of the illegal arrest was improperly admitted at trial, being the "fruits" of the illegal arrest.

The case at bar is controlled by the Supreme Court's decision in *Whiteley,* in my judgment. The officer who swore to the affidavit in the present cause merely stated:

> " * * * that he has probable cause for believing and does believe that Jimmy Lee Logan, alias, forcibly ravished * * * a woman * * *."

Such a bald, conclusory statement cannot "support the independent judgment of a disinterested magistrate" as required by *Whiteley.* The affidavit is clearly insufficient, thus the warrant is invalid as is the resulting arrest.

Not many of us thought, before the United States Supreme Court told us so in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), that a purely conclusionary affidavit wouldn't do to support a search warrant. (See Knox v. State, 42 Ala.App. 578, 172 So.2d 787, cert. den. 277 Ala. 699, 172 So.2d 795 (1965).)

Neither did many of us think, before the United States Supreme Court decision in Whiteley v. Warden, supra, that a purely conclusionary affidavit wouldn't do to support an arrest warrant.

Now, it seems absolutely clear to me that, as to both search and arrest warrants, the affidavit must contain sufficient allegations to constitute "probable cause." *Whiteley,* supra; *Aguilar,* supra; *Spinelli,* supra.

Logically, it may be asked what difference does it make if the affidavit in support of the arrest warrant is conclusionary and the subsequent arrest therefor invalid?

Probably, it makes no difference if the defendant is indicted, as he must be in Alabama to be tried for a felony, *provided* no fruits of a search and seizure, line-up, confession, fingerprints (see Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.

2d 676), etc., obtained during the illegal detention, are sought to be introduced against the defendant.

Having concluded that the arrest in this case was invalid, the question then arises whether the defendant's confession to his cellmate while he was being unlawfully detained was tainted by his illegal arrest.

While the United States Supreme Court in Clewis v. Texas, 386 U.S. 707, 711 n. 7, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967), purported to reserve the question of the admissibility of statements obtained from a defendant following an unconstitutional arrest, later cases require that it clearly appear on the record that the confession was not caused or brought about by the illegal detention.

In State v. Traub, 150 Conn. 169, 187 A.2d 230 (1962), the Supreme Court of Errors of Connecticut upheld a conviction based upon a voluntary confession obtained while the defendant was being unlawfully detained. However, when the case came before the United States Supreme Court in Traub v. Connecticut, 374 U.S. 493, 83 S. Ct. 1899, 10 L.Ed.2d 1048 (1963), the Court summarily remanded the case for further consideration in the light of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

After remand, the Connecticut court, in State v. Traub, 151 Conn. 246, 196 A.2d 755, held that while a "confession made in the course of, or following, an illegal detention * * * [is not] per se inadmissible as matter of law," it is "prima facie, inadmissible under the Wong Sun rule * * *." In other words, the state is required to prove voluntariness as a prerequisite to the admissibility of a confession in any case, but the effect of an illegal detention, under the Wong Sun rule, * * * is to add to that burden." The court concluded that:

"* * * even though, from the evidence produced, a confession made dur-

ing an illegal detention is properly found to have been truly voluntary, nevertheless, if the illegal detention was an operative factor in causing or bringing about the confession, then the confession will be considered as the fruit of the illegal detention and will be inadmissible. It is this causation factor which Wong Sun added to the previously settled voluntariness requirement in the sense that proof of its absence is now a prerequisite to the admissibility of an otherwise voluntary confession, if the confession was made during an illegal detention. * * * *"

In *Traub,* the Connecticut court, after examining the record, found sufficient evidence to conclude that the detention was not an operative factor in producing the confessions. The United States Supreme Court denied certiorari in Traub v. Connecticut, 377 U.S. 960, 84 S.Ct. 1637, 12 L. Ed.2d 503 (1964).

Similarly, in Morales v. New York, 396 U.S. 102, 90 S.Ct. 291, 24 L.Ed.2d 299 (1969), the United States Supreme Court vacated a conviction based upon a confession obtained from the defendant while in police custody. The Court acknowledged that the circumstances showed that the confession was voluntary, but remanded the cause for determination as to the lawfulness of the police detention at the time the confession was obtained in order to determine whether the confession was properly admitted at trial.

Thus, it appears to me to be the law that confessions obtained while under unlawful detention, even though shown to be voluntary, are subject to the "fruit of the poisonous tree" doctrine of *Wong Sun,* supra, if caused or brought about by the illegal detention, and that such doctrine is fully applicable to the states through Ker v. California, supra.

Upon reviewing the transcript in the instant case, I find nothing in the record to affirmatively show that the confession ad-

mitted into evidence was not a product of the illegal arrest and detention. The trial judge never considered the issue, because he was of the opinion that the arrest was constitutional.

Therefore, I am of the opinion that this cause should be remanded for further proceedings to determine whether or not the confession was the product of the illegal detention.[1]

---

1. Even though the affidavit is insufficient on its face to support probable cause, our decisions permit the State to show by adducing testimony that there were sufficient facts presented under oath to the issuing magistrate to constitute probable cause. See Clenney v. State, 281 Ala. 9, 198 So.2d 293 (1966); § 3.9, Searches & Seizures, 17A Ala.Dig.