HARRIS, Judge.
Appellant was convicted of robbery and his punishment was fixed at thirteen years’ imprisonment in the penitentiary. At arraignment, in the presence of his counsel, appellant pleaded not guilty. After sentence was imposed he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on appeal.
The evidence is conflicting and this fact makes and presents a jury question. The evidence adduced by the State is not disput *41 ed that, on the night of December 31, 1976, the victim was robbed of approximately $2,000.00. The conflict arises by virtue of the fact that appellant’s defense was an alibi.
The victim of this robbery, Mrs. Inez Hallman, testified that she lived at 2506 Hicks Avenue in Huntsville, Alabama, which was approximately one block from the Tom Thumb Beverage Store where she was robbed around 8:00 p.m. on December 31, 1976. She stated her husband had just returned from this store and had forgotten to get her some cigarettes. She got in the car and drove to the store and purchased four packages of cigarettes and a double Coca Cola. She parked almost in front of the store which was well lighted. When she returned to her car, she noticed several black males around the car and one was in the back seat. Another black male was attempting to get in her car and she screamed at him to, “Get out of my car.” This man who was subsequently identified as appellant said, “What was that you said, what was that you said?” Appellant had a cut-off stick in his hand and approached Mrs. Hallman and tried to hit her on the head with the stick. He then grabbed her and knocked her to the pavement, put his knee on her stomach, and snatched her purse from her hands. During this struggle she and appellant had moved toward the front of the store and she got a good look at his face in the light from the store. When she was knocked to the pavement, she sustained injuries to-her knees. She dropped the bottle she was carrying and it broke, cutting her on the arm.
After appellant got possession of her purse he started running and Mrs. Hallman went in pursuit of him, but she could not catch him. During the struggle to keep her purse another woman drove up and saw the black male take the purse from Mrs. Hall-man and she, too, chased the man, but when he went behind a building she returned to the store and waited for the officers to arrive.
Mrs. Hallman gave the police a description of her assailant and the clothing he was wearing, including a “boggan” on his head with bright stripes. A few days later Mrs. Hallman was taken to the police station where she viewed several mug shots but she did not identify appellant as his picture was not in this group. Several days later she viewed twelve to fourteen photographs and identified appellant as the man who knocked her down and snatched her purse.
Appellant was arrested and taken to the station house. He was given the Miranda rights and warnings and said he understood his rights. He also signed a waiver of rights form. A police officer informed him that the victim of the robbery had identified his photograph as the robber. Appellant protested that she had picked out the wrong photograph and insisted that the officers bring the victim to the station house for a face to face confrontation. The officers got the victim and brought her to headquarters and put her in a room separate and apart from appellant. The officer told appellant the victim was present but told him he could change his mind about a face to face meeting with the victim. Appellant again insisted that she be brought into the room to see if she could identify him. The officer then brought Mrs. Hall-man into the room and, as she stepped into the room, she immediately pointed her finger at appellant and said, “That is him.” Appellant started crying and shaking, and Mrs. Hallman left the room. At trial she made a positive in-court identification of appellant as the man who robbed her.
Appellant was then further questioned about the robbery and admitted he was in on the robbery but that he was not going to take the blame alone. He then named two blacks who were in on the robbery. He told the officers that his part of the proceeds of the robbery was about one hundred dollars.
The officers picked up the two men named by appellant as participants of the robbery and brought them to police headquarters. When these two men were taken to the same room where appellant was seated, appellant recanted his previous statement that he was in on the robbery and denied any knowledge of the robbery and also denied the other two men named by him as participants were present at the *42 time of the robbery. The other two men were released and appellant was placed in jail.
The victim’s husband verified the testimony of his wife that she had over two thousand dollars in her purse the night of the robbery. He stated that he had just sold an automobile for $1,875.00 cash which he gave his wife together with his paycheck in excess of $150.00.
Officer Thomas A. Miller of the Huntsville Police Department testified that he investigated the robbery. He further testified that on January 2, 1977, he was dispatched to 121 D Mason Court where he talked to a Mrs. Betty Rodgers. Mrs. Rodgers turned over to him a change purse containing Mrs. Hallman’s driver’s license and some other identification papers and picture which had been found scattered along a railroad track behind Mason Court. He stated these were located about one mile and a half from the scene of the alleged robbery.
Police Officer Daniel Della-Calce testified that he arrested appellant on Sunday morning, January 9, 1977, and on the way to the Police Department he gave him the Miranda rights and warnings. He said that, around 8:30 on that Sunday morning, he got a telephone call and the call was from Roosevelt Hall; that he met him on Bell Avenue and picked him up in his personal car. He further testified that, on January 5, 1977, he got a call from the hospital that •someone was hurt and he went to the hospital and ascertained that the injured person was Roosevelt Hall. He stated that he had a conversation with Hall at that time and that he was not under arrest, nor was he a suspect in the robbery of Mrs. Hallman. He further testified that appellant voluntarily told him that he personally had been robbed and that $1,900.00 had been taken from him.
On cross-examination of appellant he was asked if he made the statement to Officer Della-Calce that he had been robbed of $1,900.00 and he denied making any such statement.
On rebuttal the State recalled Officer Della-Calce and the proper predicate was laid for impeachment purposes. The officer was asked if appellant made the statement to him on January 5, that he had been robbed of $1,900.00 and he answered, “Yes, he did.”
As above indicated appellant set up the defense of alibi and he called three witnesses to support his alibi saying that they were together most of that day and that appellant never got out of the sight of one or more of his alibi witnesses and specifically that they were together at a club around 8:00 p.m. when the alleged robbery occurred. There were some inconsistencies of the testimonies of these alibi witnesses in that some said they had been drinking beer, wine, gin, and bourbon during the entire day, while others said that they had not had anything to drink at all.
When the State rested its case in chief, appellant made a motion to exclude the State’s evidence on the ground that a prima facie case had not been made out. This motion was overruled.
Appellant assigns as one of his errors, seeking a reversal of this case, that the trial judge erred in overruling his motion for a new trial. We have carefully searched the record for such motion and ruling. Nowhere in the record does there appear a motion for a new trial and of course no ruling thereon.
Appellant claims that the in-court identification of appellant was tainted by the photographic display made to her by the police officers and he was denied due process of law. We do not agree.
In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, the Court said:
“Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially *43 lessened by a course of cross-examination at trial which exposes to the jury the method’s potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. * * *”
We hold that the photographic identification procedure followed in this case was not so impermissibly suggestive as to have led to the likelihood of irreparable misidentifi-cation.
Moreover, at appellant’s own insistance, there was a face to face confrontation between appellant and the robbery victim in which she unequivocally identified appellant as the robber. Following this identification appellant confessed to his involvement in the robbery and implicated two others. The fact that he subsequently recanted his confessory statement did not in any way lessen the positive initial identification.
Alibi evidence presents a jury issue and the jury resolved that issue against appellant. Price v. State, 53 Ala.App. 465, 301 So.2d 230; Smith v. State, 55 Ala.App. 26, 312 So.2d 598.
Appellant contends that the trial court erred in allowing the State to recall Officer Della-Calce to impeach appellant’s denial that he told the officer that he had been robbed of $1,900.00 a few days prior to his arrest on the charge of robbing Mrs. Hallman. We answer this insistence of error by merely stating that the admission or rejection of rebuttal evidence is within the sound discretion of the trial court. Green v. State, 51 Ala.App. 654, 288 So.2d 191; Burt v. State, 54 Ala.App. 1, 304 So.2d 243; Logan v. State, 291 Ala. 497, 282 So.2d 898.
In his confessory statement appellant told one of the investigating officers that his part of the fruits of the robbery was $100.00. He told Officer Della-Calce that he had been robbed of $1,900.00. Mrs. Hall-man testified that she was robbed of approximately $2,000.00. We hold the trial court did not abuse his discretion in permitting the impeaching testimony on rebuttal.
Finally, appellant claims that the trial court erred in overruling his objection to the prosecuting attorney’s closing argument. The argument is not set out and we do not know precisely what the prosecuting attorney said. The record reveals the objection and the ruling thereon as follows:
“We object to the Prosecutor stating if she hadn’t seen him she may not be here to tell us. If she hadn’t seen him in the car she may not be able to tell us what happened. The inference being she might have been killed. We object to that as prejudicing the jury.”
“The Court: Overruled.”
Assuming the above was the argument of counsel for the State we do not think it constituted reversible error. We think it was more like the argument in Elston v. State, 56 Ala.App. 299, 321 So.2d 264, wherein the prosecutor said:
“. . I submit to you ladies and gentlemen of the Court (sic) that we were lucky no one was hurt in the robbery, and the next time that might not be true.”
In Elston, supra, this Court said:
“This argument was reasonably calculated to call the jury’s attention to the serious aspect of robbery and to appeal for law enforcement. It was within the realm of a legitimate appeal to the jury.”
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. Accordingly, the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.