BOOKOUT, Judge.
Robbery; sentence: ten years imprisonment.
*1188 On April 4, 1977, Ms. Nellie Jordan, an employee of the Big Apple Fruit Stand in Jefferson County, Alabama, was forced at knife point to open the cash register by a young black male. Forty dollars in cash was stolen from the register. Ms. Jordan testified that, at approximately 12:00 noon, appellant, whom she had never seen before, entered the store alone and asked for the owner, Ted Williams. Ms. Jordan, who was alone in the store, told appellant Williams was not in. Appellant made a purchase of cookies and exited the store. About 2:00 P.M. the same day, appellant returned to the store. Ms. Jordan recognized him from the noon encounter, remembering his inquiry about Mr. Williams. She also stated the store was quite small thus enabling her to view appellant closely on both visits. Appellant again made a purchase from Ms. Jordan who was still operating the store alone as she had been that morning. Appellant lingered in the store. As Ms. Jordan turned to put the money in the cash register, appellant accosted her with a knife around her neck cutting her slightly. He told her he wanted all the money, which she handed to him. He then ran out of the store and fled the scene on foot.
On April 6, 1978, two days after the robbery, both Ms. Jordan and Mr. Williams were in the store when Ms. Jordan observed appellant enter the store for a third time. As appellant made a purchase from Mr. Williams, Ms. Jordan signaled Williams that appellant was the robber. After asking Ms. Jordan “was she sure” appellant was the robber, Williams asked appellant what else he needed. Appellant responded he had to go home and get his money, at which time Williams asked appellant if he had robbed Ms. Jordan two days ago. Williams then pulled a gun from under his clothing. Appellant stated he did not rob her and suggested that Williams call the police. Because appellant offered no resistance, Williams returned the gun to his pants and called the police.
Appellant presented alibi evidence by his father and brother that he had been at home the day of the robbery watching television with his entire family. The witnesses stated they especially remembered the day because of a tornado and bad weather which kept them all home from work. Appellant testified on his own behalf as well as corroborating the alibi attested to by his father and brother.
I
Appellant argues the following testimony of appellant’s brother was hearsay and that its admission into evidence over appellant’s objection was harmful error requiring reversal. The evidence appears in the record as follows:
“Q. Did you ever go out there to this Big Apple Fruit Stand after it happened?
“A. Yes, I went there.
“Q. And you talked to Mr. Ted Williams?
“A. Yes, I talked to him. I wanted to find out exactly what had happened.
“Q. And you talked to Mrs. Jordan?
“A. Yes, I talked to her.
“Q. Did you talk to her or Mr. Ted first?
“A. I talked to both of them together.
“Q. And during those visits, isn’t it a fact that you told them that someone else was lying about where your brother was that day?
“A. I didn’t understand your question.
“Q. On those visits that you — was it more than once or twice or three times you saw Miss Jordan and Mr. Ted?
“A. I think it was twice.
“Q. And did you see them both together the second time?
“A. The second time I just saw — yeah, they were both together, but I had my aunt with me then.
“Q. Do you remember a conversation they told you that someone else told them that he was playing baseball?
“A. Yes, I remember that.
“Q. And that it was — they told you this other person that—
“MR. APPELL: I object to all these people.
“THE COURT: Overruled. This is a conversation between him and two witnesses.
*1189 “Q. And did Miss Jordan or Mr. Ted tell you that he couldn’t have been playing baseball with this other person because it was raining?
“A. Yes. But can I explain?
“Q. Wait a minute. And you told them that they were lying, they must have been lying?
“A. No, I did not tell them that.
“Q. Did they also tell you that person was going to get the whole baseball team to swear that he was playing baseball that day?
“A. That’s what they told me, but they could have been lying.”
Appellant’s objection was; “I object to all these people.” Hearsay was not mentioned as a ground for objection at trial, therefore, all grounds not specified were waived, and the trial court will not be put in error on grounds not assigned. Slinker v. State, Ala.Cr.App., 344 So.2d 1264 (1977); Neugent v. State, Ala.Cr.App., 340 So.2d 55, cert. denied, Ala., 340 So.2d 60 (1976). Review of objections to improper admission of evidence is not available unless appropriate grounds are stated. Rogers v. State, 53 Ala.App. 573, 302 So.2d 547 (1974). Further, the substance of the testimony appears to have come into evidence without objection during redirect examination of the witness by appellant’s counsel.
“A. So the second time I went my aunt suggested me to go back up there and try to find out a little more about it. So that was just the second time I had went up there. The only two times I had went. You know, they told me something about the guy he said my brother plays baseball with was trying to bribe them or something like that, but I didn’t know whether that was true or not.
“Q. But you didn’t try to bribe him, did you?
“A. No, I did not.
“Q. Did you tell them that your brother had been home that day?
“A. Yes I told them.”
The objectionable material having been elicited and admitted by appellant’s own counsel without objection, appellant cannot now be heard to complain of error in this matter. Pitts v. State, 291 Ala. 136, 279 So.2d 119 (1973).
II
Appellant asserts the admission of the following hearsay testimony was reversible error:
“Q. Mrs. Jordan, you testified yesterday afternoon that Murphy Johnson, a person identified himself as the Defendant’s brother came out to see you after the robbery?
“A. Right.
“Q. And you had a conversation?
“A. We did.
“Q. And what did he say to you about dropping the charges?
“MR. APPELL: I object to that as hearsay testimony.
“THE COURT: Overruled. He’s testified — Mr. Johnson has testified to that transaction.
“A. He asked me if I would drop the charges against his brother. I told him I couldn’t do that. He said his mother sick and it would be a hardship on them, something to the effect, you know, he went on and he thought I should drop it since we were all brothers and sisters, or however he phrased it. I told him I couldn’t do that, because I had a mother and children and it would have been a terrible thing had I been killed in this incident and I just couldn’t drop it. I had gone as far as going through the court proceedings and I just wouldn’t drop it.”
It is evident that the prosecutor was merely attempting to rebut the evidence of the hearsay conversation between Johnson and Ms. Jordan introduced by appellant’s counsel by eliciting the remainder of that conversation from Ms. Jordan. Cannon v. State, 53 Ala.App. 509, 301 So.2d 272 (1974); Logan v. State, 291 Ala. 497, 282 So.2d 898 (1973). Johnson denied any attempt to bribe Ms. Jordan, and the prosecutor was invoking the doctrine of curative admissibility to dispel any impression on the jury which indicated Johnson had not in fact *1190 attempted to cause Ms. Jordan to drop the charges. Madison v. State, 25 Ala.App. 50, 140 So. 623 (1972); Gamble, McElroy’s Alabama Evidence, § 14.01. We find no error in the admission of the testimony for this purpose.
The grounds relied upon by appellant for reversal have been considered in light of the record, the briefs, and the arguments, and we find no prejudicial error to the substantial rights of appellant which would mandate a retrial of this case.
AFFIRMED.
All the Judges concur.